UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY TORRES | : | PRISONER<br>CIVIL NO. 3:03CV696(JBA) |
| v. | : | |
| JOHN TROMBLY, ET. AL. | : | March 18, 2004 |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

The defendants, "John" Trombly, Eric Purvis, Deborah Kindness, Thomas Coates, Theresa C. Lantz, Patricia Wollenhaupt and Sheila Hughes ("defendants" ) respectfully request that the Court grant their motion to dismiss any and all claims against them in their official and individual capacities. Plaintiff alleges in his Second Amended Complaint, ("SAC") dated September 16, 2003, that his blood pressure medication was withheld on one, single occasion, on March 16, 2003. See SAC at p. 2, ¶I. 1. This Court, in its March 4, 2004 Ruling denying plaintiff's motion for a TRO or Preliminary Injunction ("Ruling"), noted that "there is no showing of irreparable harm." Ruling at 7. Indeed, this Court correctly noted that "[e]ven if the plaintiff did not receive his medication on one day in March 2003, the plaintiff does not allege in his motion, memorandum or declaration that he suffered any ill health effects due to the denial of medication on that one occasion,..." Ruling at 4. Thus, any and all claims for compensatory damages are barred by 42 U.S.C. §1997e(e) for lack of any physical injury. See e.g. Alexander v. Tippah County, 351 F.3d 626 (5th Cir. 2003). For these reasons, and for the reasons discussed below, the defendants' motion to dismiss should be granted.

## STANDARD OF REVIEW

I.    **A Motion To Dismiss May Be Granted At Any Time**

The Prison Litigation Reform Act (PLRA) gave the District Court several new tools to manage prison litigation and reduce its docket.  Under the new amendments to §1915, the Court has much greater authority to sua sponte dismiss inmate §1983 lawsuits.  Indeed §1915(e)(2)(B) requires that "the court shall dismiss the case at any time if the court determines that...  the action...is frivolous or malicious;...  fails to state a claim on which relief may be granted; or...seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii). (emphasis added).  See Atkinson v. Bohn, 91 F.3d 1127, 1128-29 (8th Cir. 1996) (case dismissed for failure to state a claim pursuant to 28 U.S.C. §  1915(e) after amended complaint filed); Everson v. Nelson, 941 F.Supp. 1048 (D.Kan. 1996) (court denied defendant's motion for summary judgment and dismissed for failure to state a claim pursuant to 28 U.S.C. §  1915(e) a case filed in 1993).  Dismissal of a complaint by a district court under any of the three enumerated sections of 28 U.S.C. §1915 (e)(2)(B) is mandatory rather than discretionary.  See Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000).  There can be no doubt that this action meets each of the three prongs of 28 U.S.C. §1915 (e)(2)(B).  The Second Amended Complaint is frivolous, fails to state a claim, and defendants here are immune from suit and have qualified immunity.  Therefore, the action should be dismissed in its entirety.

The Second Circuit Court of Appeals will review de novo the district court's Rule 12(b)(6) dismissal of Mr. Torres's complaint.  Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998).  Thus, this Court is bound accept all the material allegations of the complaint and should not grant the dismissal, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46,

(1957). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted pro se." Chance, 143 F.3d at 701. Finally, when addressing a pro se complaint, a district "court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991). Unfortunately for plaintiff, here, he has amended his complaint twice, and he has not alleged anything other than less than de minimis injury, indeed, no injury at all, despite the filing of a lengthy Second Amended Complaint. ("SAC").

## FACTS

Because this case is proceeding on defendants' motion to dismiss, for argument's sake, under the standard discussed above, the Court is bound accept all the material allegations of the SAC. The SAC alleges that on the morning of March 16, 2003, at approximately 9:30 a.m. both defendants Kindness and Trombly approached plaintiff's cell door to dispense medication. SAC at 15, ¶23. Plaintiff describes a conversation which allegedly occurred resulting in plaintiff not receiving his medication because he refused to comply with C/O's Trombly's order to put on a T-shirt. That afternoon, on March 16, 2003, at approximately 2:15 p.m., defendant Correction Officers Trombly and Purvis were in the Unit taking the inmate count, and were "served" with a "emergency" grievance allegedly concerning C/O Trombly. SAC at 18, ¶¶25, 26. At approximately 4:00 p.m. that same day, plaintiff complained to two correctional supervisors, Lieutenants Gargiulo and Casey about the morning incident and the T-shirt rule. At 10:30 p.m. that same evening, March 16, 2003, plaintiff received a written response from Lt. Gargiulo. SAC at 24, ¶30; see also Grievance dated 3-16-03, attached to SAC and responded to by Lt. Gargiulo, acknowledged received by Torres at 10:30 p.m. on March 16, 2003. The Lt. was

3

informed that plaintiff refused to follow a lawful direct order from C/O Trombly and was informed by medical staff that plaintiff refused his medication. Id.

Plaintiff alleges that the next day, March 17, 2003, defendant Kindness again was doing medication rounds and advised the plaintiff he must put on his T-shirt prior to receiving his medication, but when plaintiff refused, Nurse Kindness dispensed plaintiff's medication to him anyway. SAC at 27, ¶33; Ruling of Motion for TRO/PI (March 4, 2004) at 3. Plaintiff alleges that he notified defendants Coates, Dumas, Hughes, Wollenhaupt and Commissioner Lantz, either verbally or in writing of the conduct of Kindness and Trombly, which plaintiff asserts in conclusory fashion is "unconstitutional." SAC at 28, ¶35. The only evidence of any communication between Sheila Hughes and plaintiff is contained on an attachment to the SAC, an "Emergency Medical Grievance" dated 3/16/03 noted by Torres as (hand delivered to nurse) and responded to by CHN[Correctional Head Nurse] Badura on 3/19/03 stating in part that "This is not a medical emergency because it is not life threatening." CHN Hughes affirmed this conclusion also, stating in writing on the grievance, "This complaint does not meet the criteria for health emergency and is therefore rejected." There is no other involvement by CHN Hughes alleged in the SAC.

Major Coates has even less involvement in this matter. Plaintiff alleges that he wrote to Major Coaetes on April 1, 2003, complaining that he was never notified of the amendments to the statewide administrative grievance procedure, set forth in A.D. 9.6. SAC at 39, ¶50; see also letter to Coates attached to SAC dated April 1, 2003. Major Coates responded in a memo dated April 3, 2003, also attached to the SAC, stating, "I believe we fulfilled our obligation to notify in accordance with A.D. 9.6, Sections 4 & 5." Next, plaintiff alleges that on April 11, 2003, C/O Trombly called plaintiff via the cell intercom and began to verbally harass the plaintiff by saying

4

"Fuck you" and other epithets.  Plaintiff alleges (although it is impossible to tell how plaintiff

has any personal knowledge of DOC records or documents) that Trombly falsified DOC records

to indicate that plaintiff had received his shower for April 11, 2003.  As a result, plaintiff alleges

that he did not receive three showers that week, and was forced to go without a shower for five

days. SAC at 31-32, ¶39.

Nowhere in plaintiff's complaint does he allege any physical injury or any harm

whatsoever, either as a result of his having missed his medication on March 16, 2003, or as a

result of having missed a shower on April 11, 2003.  Further plaintiff admits in his SAC that he

failed to fully exhaust his administrative remedies, because he believed that doing so would be

futile.  SAC at 44-45, ¶ 57.  As a result of plaintiff's belief, he asks the Court to waive the

exhaustion of remedies requirement mandated by the Prison Litigation Reform Act. SAC at 46,

subpara. (f).  Further facts will be discussed as may become necessary, as applied to the legal

claims of the defendants discussed below.

### I.    PLAINTIFF'S CLAIMS FOR DAMAGES ARE BARRED BY 42 U.S.C. §1997e(e)

Under  §1997e(e), "no Federal civil action may be brought by a prisoner confined in a

jail, prison, or other correctional facility, for mental or emotional injury suffered while in

custody without a prior showing of physical injury."  The "'physical injury'  required by

§1997e(e)  'must be more than de minimus [sic], but need not be significant.'"  Harper v.

Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193

(5th Cir. 1997)) (alteration in original).  (Dismissing a prisoner's section 1983 action on the basis

that a bruised ear lasting for three days was de minimis and could not serve as the requisite

physical injury needed for a claim for emotional suffering); Wright v. Miller, 973 F. Supp. 390,

396 (S.D.N.Y. 1997)  (holding that prisoners could not recover damages for mental anguish

under the PLRA).  See Cox v. Malone, 199 F. Supp. 2d 135 (S.D.N.Y. 2002) aff'd 56 Fed. App'x. 43, 2003 U.S. App. LEXIS 3008 (2d Cir. 2003)(citing Siglar with approval, and noting that §1997e(e) was intended to deter frivolous prisoner lawsuits seeking damages).

    In this action, plaintiff does not allege any physical injury whatsoever, and in part alleges that he was subjected to verbal abuse by defendant Trombly.  However, as noted in defendants' February 24, 2004 Memorandum in Opposition to Motion for TRO/PI,  ("Memo") verbal abuse, verbal threats or harassment are insufficient to form a basis for a §1983 action.  See Memo at 5-6, citing, inter alia, Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir 1985); accord, Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir 1986); Haskin v. Jones, Civ. No. 3:00CV997(WWE)(HBF)(D.Conn. April 3, 2002)(other citations omitted).

    In Lamb v. Bumpus, 52 Fed. Appx. 740; 2002 U.S. App. LEXIS 25836 (6th Cir 2002)(copy attached), a prisoner, like the plaintiff here,  alleged that he was verbally abused or threatened.  The district court dismissed, relying on §1997e(e) and the Sixth Circuit affirmed noting that the District court properly dismissed as frivolous a prisoner's §1983 complaint with respect to a jail sergeant because the prisoner, at most, alleged that the jail sergeant was verbally abusive toward him.  In Jones v. H.H.C. Inc. 2003 U.S. Dist. LEXIS 6510 (S.D.N.Y. 2003) the Southern District Court of New York noted that courts have strictly construed the physical injury requirement of §1997e(e), barring claims by prisoners who demonstrate solely emotional or mental injury and barring  physical injury  claims where the injury alleged is de minimis." Porter v. Coombe, 1999 U.S. Dist. LEXIS 11924, 1999 WL 587896, at *2 (S.D.N.Y. Aug. 4, 1999).  In Jones, a Muslim inmate alleged that he had been served pork in violation of his first amendment right to a diet consistent with his Muslim religion.  He further alleged that the pork caused him to suffer from high blood pressure.  The court rejected the high blood pressure claim, similar to the

claim made by the plaintiff Torres in this case, and reasoned that high blood pressure fails to state a cognizable claim for physical injury. Instead, the court in <u>Jones</u> recognized that although Jones claimed that he had suffered psychological damage, and that the porcine Heparin <u>elevated his blood pressure</u>, [emphasis added], these consequences of the defendants' conduct, even if established, <u>are clearly insufficient to meet the "physical injury" threshold</u>. <u>See Alonzo v. Squyres</u>, 2002 U.S. Dist. LEXIS 14935, 2002 WL 1880736 (N.D. Cal. Aug. 9, 2002)(emphasis added)(plaintiff taken to hospital for high blood pressure, brought on by "gruesome psychological harassment[]," has not suffered a prior physical injury). Cf. <u>Pinkston-Bey v. DeTella</u>, 1997 U.S. Dist. LEXIS 3969, 1997 WL 158343, at *3 (N.D. Ill. Mar. 31, 1997)(severe headaches are not physical injury).

Here, plaintiff has alleged no injury as a result of not having his medication for a single day or as a result of missing a shower on a single day, resulting in a period of five days without a shower. SAC at 62. As this Court noted in its March 4, 2004 Ruling "plaintiff does not allege that he suffered any harm as a result of either the verbal harassment or the denial of a shower. Furthermore, the second amended complaint, filed in September 2003, does not include any allegations that defendant Trombly denied the plaintiff a shower on any other occasion." Ruling at 5-6. Consequently, this Court is bound under 42 U.S.C. §1997e(e) to dismiss Mr. Torres's Second Amended Complaint for failure to state a claim.

## II.   <u>Plaintiff Failed To Fully Exhaust Before Bringing This Action</u>

An examination of the docket sheet in this case reveals that plaintiff brought this action on April 16, 2003, exactly thirty days after the alleged interference with his medication and interception of his grievance. Unfortunately for plaintiff, under the exhaustion requirements of the PLRA no action may be brought until all remedies which are available have been fully

exhausted. To begin, the plain language of § 1997e(a), providing that "no action shall be brought . . . until such administrative remedies as are available are exhausted," requires that exhaustion prior to commencement of a § 1983 action is mandated. See Porter v. Nussle, 534 U.S. 516, 524 (2002); See also Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) (holding that an inmate may not avoid the requirements of 42 U.S.C. § 1997e(a) by exhausting administrative remedies after filing a civil rights action in federal court). Where exhaustion is required, failure to do so must result in dismissal, notwithstanding efforts by the inmate-plaintiff to pursue administrative remedies while simultaneously seeking relief in federal court. Neal, 267 F.3d at 117-118.

This District Court has held that any attempt to complete the exhaustion process after the commencement of the prisoner action requires that the action be dismissed, See, e.g. Ziemba v. Clark, 3:02CV1609(AWT) (DFM), 2003 U.S. Dist. LEXIS 22117 (D.Conn. Dec. 4, 2003); Harris v. Conn. Dep't of Corr., No. 3:02CV706(AWT), 2003 U.S. Dist. LEXIS 16642 (D.Conn. September 15, 2003). Thus, any attempt to exhaust administrative remedies after the case was filed is ineffective to satisfy the exhaustion requirement. In addition, "prison officials are entitled to require strict compliance with an existing grievance procedure." Hemphill v. New York, 198 F. Supp. 2d 546, 549 (S. D.N.Y. 2002).

Here, Mr. Torres has simply failed to comply with the Connecticut DOC's grievance procedure set forth in Administrative Directive 9.6, attached to Plaintiff's SAC (effective March 5, 2003) http://www.ct.gov/doc/cwp/view.asp?a=1494&Q=265226&docPNavCtr=|#40679. Paragraph 15 of A.D. 9.6 provides that the reviewer of a grievance has 30 days to provide a response in writing to the inmate. Paragraph 16 of A.D. 9.6 provides that an inmate may appeal a Level 1 grievance to Level 2, by filing an appeal within 5 days of receiving the Level 1 response.

The response to a Level 2 grievance shall be made in writing within 30 days after receipt of the Level 2 grievance. It is impossible for plaintiff to have completed the various levels of the grievance procedure prior to commencing this action, on April 16, 2003, since the thirty days from March 16, 2003 had not yet even run, and further because plaintiff does not allege anything other than that he "received an evasive and obstructive response" on March 26, 2003. SAC ¶53 at p. 41. There is no allegation that plaintiff appealed this response to Level 2 as is required by §1997e(a) prior to commencing this action.

Instead, plaintiff admits that he failed to exhaust, and alleges in paragraph 57 that his administrative remedies have been "rendered totally futile…" SAC at 44, ¶57. Unfortunately for plaintiff, futility is not an exception to the exhaustion requirement of the PLRA. See Booth v. Churner, 532 U.S. 731, 734-35, 741, & n. 6 (2001); (stating that "we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise"). Plaintiff asserts that the court should "waive the exhaustion of remedies requirement mandated by the Prison Litigation Reform Act…" SAC at 46 ¶(f). This the court cannot do under Booth v. Churner, supra. "An inmate's failure to appeal a grievance is not excused because he has received no response to his initial grievance." Arce v. Keane, 01 Civ. 2648 (BSJ), 2004 U.S. Dist. LEXIS 3698 (S.D.N.Y. March 9, 2004). As noted by the district court in Arce v. Keane, "Among other reasons, Congress enacted § 1997e(a) to give prison officials an opportunity to take corrective actions that might obviate the need for litigation and to assure that adjudication by federal courts would be facilitated by an administrative record that clarifies the contours of a controversy. See Porter, 534 U.S. at 524-25; Booth v. Churner, 532 U.S. at 737." Allowing an inmate to opt out of the Connecticut DOC's grievance scheme as set forth in A.D. 9.6 without filing even one appeal and before receiving any response or after

receiving an unsatisfactory level 1 response, without an appeal to higher prison authorities would undermine these goals.   It is unreasonable to read A.D. 9.6 as providing that a federal action is the next and only recourse when the prison fails to respond or responds in an allegedly unresponsive fashion to an initial grievance.  See Arce v. Keane, supra.; see also Ziemba v. Clark, 3:02CV1609(AWT) (DFM), 2003 U.S. Dist. LEXIS 22117 (D.Conn. Dec. 4, 2003).   In Hock v. Thibideau, 245 F. Supp. 2d 451 (D.Conn. 2003), Judge Goettel concluded that plaintiff must exhaust all available administrative procedures as set forth in the Administrative Directive 9.6 prior to filing suit in Federal Court, (emphasis added), citing Booth, 532 U.S. at 736.  Id. 245 F. Supp. 2d at 456.  Judge Goettel rejected the claim that participating in an investigation or writing letters of complaint to the Commissioner satisfied the exhaustion requirement stating, "Significantly, the Directives do not provide that exhaustion may occur through merely an inmate's direct, voluntary participating in a DOC investigation, or by voluntarily providing additional information to the DOC beyond that initially sought in its investigation. See Directive 9.6. Consequently, such inmate actions, coupled with the DOC's responsive actions, cannot be a means to satisfy the exhaustion requirement.  See Booth, 532 U.S. at 736; Calca, 2001 U.S. Dist. LEXIS 3401, 2001 WL 256170, at *4; Directive 9.6." Hock v. Thibedeau, at 456. Judge Goettel concluded that no futility exception may be read into A.D. 9.6. Id. at 458.  Because plaintiff has failed to exhaust his administrative remedies, and further because there is no futility exception allowed by law, the plaintiff's SAC should be dismissed in its entirety for these additional reasons.

### III.    There Was No Deliberate Indifference To The Plaintiff's Serious Medical Need

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 291

(1976). Mere negligence will not support a Section 1983 claim. The conduct complained of must "shock the conscience" or constitute a "barbarous act." McCloud v. Delaney, 677 F. Supp. 203, 232 ((S.D.N.Y. 1988). (Citing) United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970). A treating physician will be liable under the Eighth Amendment only if his conduct is "repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06.

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, __ U.S. __, 115 S.Ct. 1108 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting)). See, e.g., Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1988) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instructions), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, are considered "serious." See e.g. Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988); Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); May v. Baldwin, 895 F.Supp. 1398 (D-Or. 1995) (dry skin); Glasper v. Wilson, 559 F.Supp. 12 (W.D.N.Y. 1982) (bowel problems).

Subjectively, the prison official must have acted with "sufficiently culpable state of mind." Hathaway v. Coughlin, supra, 37 F.3d at 66. "[A] prison official does not act in a

deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate's health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk if serious harm exists, and he must also draw the inference." (quoting Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1979 (1994).

Inmates do not have a constitutional right to the medical treatment of their choice. See Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986) ("correctional facility is not a health spa, but a prison in which convicted felons are incarcerated"). Thus mere disagreement with prison officials about what constitute appropriate medical care does not state a claim cognizable under the Eighth Amendment. Ross v. Kelley, 784 F.Supp. 35, 44 (W.D.N.Y.), aff'd 970 F.2d 896 (2d Cir.), cert. denied, 506 U.S. 1040 (1982).

As noted above in Section I of this memorandum, as well as in this Court's March 4, 2004 Ruling at 5, plaintiff has not alleged any harm from the alleged denial of medication. Thus, plaintiff has not alleged any objectively serious injury sufficient to base an eighth amendment violation. As noted in the cases that fail to find sufficient physical injury under §1997e(e), high blood pressure, standing alone, does not state a physical injury sufficient to seek a money damage claim under §1983. See supra, at 6-7, citing Jones v. H.H.C. Inc. 2003 U.S. Dist. LEXIS 6510 (S.D.N.Y. 2003); Alonzo v. Squyres, 2002 U.S. Dist. LEXIS 14935, 2002 WL 1880736 (N.D. Cal. Aug. 9, 2002)(plaintiff taken to hospital for high blood pressure, brought on by "gruesome psychological harassment[]," has not suffered a prior physical injury).

In the present case, the plaintiff alleges that he was denied blood pressure medication on one occasion. He does not allege that he was deprived of his medication on any other date between March 16, 2003 up to the date of his SAC, September 16, 2003. Thus, plaintiff, in

effect, admits that he continuously received his medication for a period of six months.  In view

of this consistent record of medication administration, and in the absence of any claim to the

contrary by plaintiff, this Court should grant plaintiff's motion to dismiss as to any and all

medical claims, including but not limited to claims for monetary damages and injunctive relief.

This Court in its March 4, 2004 Ruling correctly noted that there is absolutely no showing of

irreparable injury sufficient to warrant the issuance of an injunction.  Ruling at 5.  This Court

further concluded that any claims that plaintiff may be denied his medication in the future are

purely speculative.  Id.  Baur v. Veneman, 352 F.3d 625, 633 (2d Cir. 2003)(the asserted injury

must be "concrete and particularized" as well as "actual or imminent, not 'conjectural' or

'hypothetical.'"  citing Lujan, 504 U.S. at 560.)

## IV.    Plaintiff's Retaliation Claims Are Baseless

In Counts Seven, Eight and Nine of his SAC, plaintiff alleges, in part, that defendant

Trombly intercepted his emergency grievance on March 16, 2003, and deprived him of his

right to petition for redress of grievances.  He further alleges, that as a result of filing a

grievance, Trombly deprived plaintiff a single shower on April 11, 2003, allegedly in

retaliation for filing a grievance naming Trombly.  Plaintiff claims that this denial of a shower

constituted the "imposition of a very serious chilling effect upon the plaintiff for his exercise

of his protected constitutional rights to petition the government for redress of grievances, due

process, and equal protection of the law."  SAC at p. 61.  Plaintiff's claims in this regard are

baseless, indeed, frivolous, and are belied by the very attachments that plaintiff attaches to his

SAC.

Because prisoner retaliation claims are "easily fabricated," and accordingly "pose a

substantial risk of unwarranted judicial intrusion into matters of general prison

administration," the Second Circuit has admonished district courts to be careful to require non-conclusory allegations. Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002). In order to prevail on his retaliation claims, Mr. Torres bears the burden of showing, first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials. See Gayle v. Gonyea, 313 F.3d 677 (2d Cir. 2002) (alleging false disciplinary report); Hendricks v. Coughlin, 114 F.3d 390 (2d Cir. 1997) (alleging retaliatory transfers). Here, plaintiff's allegations of alleged "retaliation" do not even rise to the level of a disciplinary report or a transfer, but rather merely allege a routine prison transaction, that plaintiff missed a single shower on a particular day.

Plaintiff alleges, albeit incorrectly, that Trombly intercepted his grievance. But see plaintiff's SAC attachment "Inmate Grievance Form A, Level 1, captioned in plaintiff's handwriting "Emergency Medical Grievance" dated March 16, 2003, and noted by plaintiff as "Hand Delivered to Nurse." Plaintiff's claimed "emergency" was no emergency, and indeed, Nurse Sheila Hughes, a defendant in this case because she rejected this grievance, noted as follows, "This complaint does not meet the criteria for health emergency and is therefore rejected." Plaintiff's SAC attached "Emergency medical Grievance" dated 3-16-03.

Construing the allegations most favorably toward plaintiff as one must for a motion to dismiss, plaintiff only alleges a single instance of alleged "grievance tampering" by Trombly. Even in the context of legal mail to the court, not an internal prison grievance, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. See Morgan v. Montanye, 516 F.2d 1367, 1371 (2d Cir. 1975); Washington v. James, 782 F.2d

1134, 1139 (2d Cir. 1986). Rather, the inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." <u>Cancel v. Goord,</u> 2001 U.S. Dist. LEXIS 3440, No. 00 Civ. 2042, 2001 WL 303713, at *4, *6 (S.D.N.Y. Mar. 29, 2001) ("In order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim.") (<u>citing</u> <u>Lewis v. Casey</u>, 518 U.S. at 353, 116 S. Ct. at 2181). <u>Cancel</u>, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713 at *6 (citing <u>Washington</u>, 782 F.2d at 1139).

Here, although plaintiff Torres is remarkably adept at using "buzz words" such as "maliciously retaliating" (see e.g. SAC at p. 62), his own voluminous documentation attached to his complaint completely refutes his claim that the loss of a single shower had any "chilling effect" on his ability to write inmate grievance, complaints letters or other documents. Indeed, a careful review of plaintiff's attachments reveals that despite any alleged "very serious chilling effect," plaintiff wrote the following documents, all after the alleged loss of a shower, and all attached to the SAC: (1) the Second Amended Complaint dated September 16, 2003; (2) Grievance dated 4-14-03; (3) Inmate Request for date 4-11-03; (4) Grievance dated 4-21-03; (5) Letter to Commissioner Lantz dated 4-18-2003; (6) Motion for Extension of Time dated Sept. 15, 2003; (7) Motion for Recusal dated October 9, 2003.[1]

---

[1] When ruling on a motion to dismiss, the court may consider "only the facts alleged in the pleadings, <u>documents attached as exhibits,</u> [emphasis added], or incorporated by reference in the pleadings and matters of which judicial notice may be taken." <u>Samuels v. Air Transport Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993); compare <u>Hunnicut v. Armstrong</u>, 3:03CV627 (PCD)(D.Conn. Feb. 25, 2004) Ruling on Defendants' Motion to Dismiss at 18-19 (declining to consider grievances which were not attached to the complaint and not provided to the court).

In addition it should be noted that plaintiff successfully filed a Petition for a Writ of Mandamus with the Second Circuit Court of Appeals during the pendency of this action despite the alleged "very serious chilling effect" which resulted in an order from the Second Circuit in effect directing the District Court to render judgment in this case within 90 days. A review of the docket sheet in this case reveals that Documents ## 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10 were all filed by plaintiff on 4-16-03, 6-12-03 and 6-18-03, including numerous pages of motions, pleading and memoranda. Plaintiff falsely claims that his right to petition the government for redress of grievances has been "seriously chilled."

Defendants respectfully claim that plaintiff's claimed "retaliatory act" of a denial of a shower is per se de minimis. It had absolutely no chilling effect on plaintiff as demonstrated by his voluminous filings with this court. Further, the loss of a single shower, would not deter a similarly situated person from filing a grievance or a prisoner civil rights action with this court. "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is simply de minimis, and therefore outside the ambit of constitutional protection." Dawes v. Walker, 239 F.3d 489, 492-93 (2d Cir. 2001) (citations omitted); *accord, e.g.*, Morales v. Mackalm, 278 F.3d at 131; Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999); Thaddeus-X v. Blatter, 175 F.3d 378, 396-98 (6th Cir. 1999) (to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment); Crawford-El v. Britton, 320 U.S. App. D.C. 150, 93 F.3d 813, 826 (D.C. Cir. 1996) (*en banc), rev'd on other grounds,* 523 U.S. 574, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998).

Here, plaintiff alleges a single instance of interference with a grievance by Trombly. There was no harm alleged, as plaintiff apparently wrote two other grievances on March 16, 2003, and called one a "Medical Emergency Grievance" which plaintiff hand delivered to a nurse, and a line grievance which he gave to the Lieutenants who toured at four o'clock in the afternoon of March 16, 2003. SAC ¶ 29. In <u>Washington</u>, the Second Circuit determined that as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an on going practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received. 782 F.2d at 1139. Following <u>Washington</u>, district courts have generally required specific allegations of invidious intent or of actual harm where the incidents of tampering are few and thus the implication of an actionable violation is not obvious on its face. <u>See, e.g.</u>, <u>Cancel</u>, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713 at *6 (dismissing claim where only two incidents of tampering alleged and no other indications of a continuing practice); <u>John v. N.Y.C. Dep't of Corrections</u>, 183 F. Supp. 2d 619, 629 (S.D.N.Y. 2002) (requiring plaintiff to allege facts that show defendants acted with invidious intent and plaintiff was harmed by the interference); <u>Hudson</u>, 2000 U.S. Dist. LEXIS 17913, 2000 WL 1838324 at *5 (same); <u>Johnson v. Morton</u>, 1996 U.S. Dist. LEXIS 22612, No. 95 Civ. 949, 1996 WL 518078, at *1 (E.D.N.Y. Aug. 26, 1996) (noting that "courts have consistently applied <u>Morgan [v. Montanye]</u> to dismiss suits by inmates alleging unconstitutional opening of their legal mail without any showing of damages"); <u>See also Lewis v. Casey</u>, 518 U.S 343 at 351, 116 S. Ct. at 2180(1996) (holding that inmate must establish actual injury, rather than "theoretical deficiency" with legal library or legal assistance program to state constitutional claim for interference with access to courts).

A plaintiff must allege that the defendant "took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997). This the plaintiff has not done. He has simply made the conclusory allegation that he is being retaliated against by defendant Trombly simply based on an isolated incident of an alleged interception of an inmate grievance on March 16, 2003, and a completely unrelated loss of a single opportunity to take a shower on April 11, 2003. There is no temporal relationship between these two events. Presumably plaintiff received his three weekly showers during the four weeks from March 16 to April 11, 2003. There is no causal connection between the alleged filing of a grievance, and the minor inconvenience of missing a single shower, nearly four weeks later. When viewing these facts with the proper "skepticism" required by Second Circuit case law, it becomes obvious that there are a multitude of otherwise reasonable explanations why a single shower opportunity on a particular day, was missed. The most common reason would simply be that staff simply ran out of time to accommodate each inmate who had to be released for a shower. If showers could not be completed during one shift, staff would simply leave for the day at the end of their shift, for example day shift, and second shift staff would assist in attempting to complete the task of providing a shower for the inmate. The Second Circuit, has reasoned as follows:

> [C]ourts must approach prisoner claims of retaliation with skepticism and particular care. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation-- can be characterized as a constitutionally proscribed retaliatory act. See Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988).

18

Dawes v. Walker, 239 F.3d 439 at 491. This Court, which is very familiar with the numerous prisoner claims made in the hundreds of prisoner civil rights actions on file in this Court, easily recognizes the common sense statement made by the second Circuit in Dawes, that "Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large." Id. at 491. Thus, the Second Circuit has set up a stringent test for a claim of retaliation to survive summary dismissal as follows: "To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Plaintiff Torres has failed to make such a prima facie showing. Even assuming arguendo that he has alleged facts to meet the first two prongs, he has absolutely no evidence, nor has he alleged any specific facts sufficient to establish a causal connection between the acts of any defendant and plaintiff's alleged protected conduct. Accordingly, plaintiff's retaliation claims may be summarily dismissed.

**V.    Verbal Harassment Does Not Constitute A Constitutional Violation**

The plaintiff asserts that he was verbally harassed by Trombly over the intercom on April 11, 2003. There is a long line of cases which have established that "[v]erbal harassment does not state an Eighth Amendment violation. See Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985) ('Verbal threats are not constitutional violations cognizable under § 1983.'); accord, Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986). See Cuoco v. U.S. Bureau of Prisons, No. 98 Civ. 9009 (WHP), 2001 WL 167694, at *3 (S.D.N.Y. Feb. 16, 2001) (holding that, although abhorrent, verbal harassment and profanity do not violate an inmate's constitutional rights); Rivera v. Goord, 119 F. Supp. 2d 327, 342 (S.D.N.Y. 2000) (same); Ramirez v. Holmes,

921 F. Supp. 204, 210 (S.D.N.Y. 1996) ('Allegations of threats or verbal harassment without injury or damage, do not state a claim under 42 U.S.C. § 1983."); Jeromoson v. Coughlin, 878 F. Supp. 444, 449 (N.D.N.Y. 1995) ('Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.')." Haskin v. Jones, Civ. No. 3:00CV997 (WWE)(HBF) (April 3, 2002).  In Johnson v. Moore, 2001 U.S. App. Lexis 5031 (6th Cir. 2001), the court held "[a]llegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment.  Citing Ivey v. Wilson, 832 F.2d 950, 955 6th Cir. 1987).  The court further held that allegations of verbal harassment do not rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  Id. Since the plaintiff's assertions regarding alleged verbal harassment by Trombly do not rise to the level of a constitutional violation, they fail to state a cause of action under § 1983, and these claims should be dismissed.

### VI.   Plaintiff Fails To State A Claim For Conspiracy Pursuant To 42 U.Sc. 1985 (3)

The plaintiff alleges that the defendants Trombly and Kindness conspired to falsify documents and medical records to wrongfully cover up their interference with the plaintiff's prescribed medication on March 16, 2003. SAC, pp. 48-51, Counts Two and Three. The plaintiff has no personal knowledge of this nor does he have any competence to make this allegation based on personal knowledge.

The Second Circuit has consistently held that a claim of conspiracy to violate civil rights must contain more than general allegations.  "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are

insufficient, unless amplified by specific instances of misconduct." Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002) (quoting Dwares v. City of N.Y., 985 F.2d 94, 100 (2d Cir. 1993) (citations, internal quotation marks, and internal alterations omitted)). See also, e.g., Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999) (holding that vague, general or conclusory allegations of conspiracy are insufficient to withstand a motion to dismiss); Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). "In order to survive a motion to dismiss on his § 1983 conspiracy claim, [plaintiff] must allege (1) an agreement . . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Ciambriello, 292 F.3d at 324-25 (citations omitted).

Torres includes in his SAC general references and conclusory statements that defendants Trombly and Kindness conspired to deny him a single dose of medication and to falsify documents or interfere with grievance procedures when plaintiff complained. These general statements fail to comply with the Second Circuit's pronouncement on the proper manner to allege a conspiracy claim. Torres has not cited any specific unlawful agreement to violate his constitutional rights in support his allegations of conspiracy. The court should conclude here, as it did in Hunnicutt v. Armstrong, that the statements in the SAC are insufficient to allege a claim of conspiracy and are insufficient to put defendants on notice regarding what actions they have taken to support a conspiracy claim. Moreover, the Court has already concluded in its March 4, 2004, Ruling on Motion for TRO and/or Preliminary Injunction that there was no deliberate indifference to plaintiff's serious medical needs. Since there was no underlying constitutional violation, the plaintiff is logically precluded from prevailing on conspiracy counts claiming that there was a conspiracy to violate plaintiff's constitutional rights, when neither the

constitutional rights were violated nor the conspiracy ever existed. Thus, defendants' motion to dismiss should be granted as to any conspiracy claims.

Finally, section 1985 (3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights. Griffin v. Breckenridge, 403 U.S. 88, 101-02 (1971). See also, Hunnicutt v. Armstrong, Ruling at 34.

The court should consider Torres's conspiracy claims above and find them insufficient. Thus, he fails to state a claim under section 1985 (3). Moreover, even if the court were to find that Torres had alleged sufficient facts to support a claim of conspiracy, he alleges no facts from which the court could infer a racial or class-based animus. The mere fact that Torres is presumably Black and/or Hispanic and, presumably, the defendants are white is insufficient to support a section 1985 claim. See Gatling v. Atlantic Richfield Co., 577 F.2d 185, 188 (2d Cir.) (proof that the plaintiff is presumably black and/or Hispanic is insufficient to justify an inference that defendant's conduct was racially motivated), cert. denied, 439 U.S. 861 (1978). Thus, any claim brought pursuant to section 1985 should be dismissed pursuant to 28 U.S.C. § 1915 (e) (2) (B) (ii).

VII.    **Plaintiff's Remaining Claims Are Without Merit**

   A.    **Grievance Procedure**

Torres alleges that the inmate grievance procedure was insufficient because grievances were lost, intercepted or officials failed to respond as provided under institutional rules. Otherwise, he generally alleges that he was unsatisfied with the responses he received because he either disagreed with the response or he found the response evasive or nonresponsive.

"A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result in the constitutionalizing of every state rule, and would not be administrable." Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993) (citing Engle v. Isaac, 456 U.S. 107 (1982)), overruled in part on other grounds by Thompson v. Keohane, 516 U.S. 99, 111 (1995). In Hunnicutt v. Armstrong, Ruling at 29, this District Court agreed with the rationale of the Sixth Circuit and concluded that any claim that the DOC defendants failed to follow the grievance procedures set forth in Administrative Directive 9.6 does not demonstrate the denial of a constitutionally or federally protected right and, thus, is not cognizable in this civil rights action.

This conclusion is well grounded in Second Circuit law, and is well founded based on principles of comity, abstention and sovereign immunity. In Watson v. City of New York, 92 F.3d 31, 37-38 (2d Cir 1996), the Second Circuit acknowledged once again that state rules of procedure and state procedures do not create federally protected rights. Indeed, the Second Circuit characterized this argument, made by the plaintiff Torres in this case as "fundamentally flawed." Id. 92 F.3d at 37. See Cofone v. Manson, 594 F.2d 934, 938(2d Cir. 1979). Agreeing with the Seventh Circuit, the Court in Watson, 92 F.3d at 38 quoted, in part, that "Constitutionalizing every state procedural right would stand any due process analysis on its head." Citing with approval Shango v. Jurich, 681 F.2d 1091, 1101 (7th Cir. 1982).

Plaintiff asserts various alleged procedural process problems with A.D. 9.6, including but not limited to the allegation that his level two and level three appeals went allegedly "unanswered" SAC ¶ 51 at 40, and that on April 4, 2004 he received an "evasive and obstructive response" from the NCI Grievance Coordinator. In view of the fact that plaintiff filed suit on April 16, 2004, he in fact did not exhaust, as he alleges in paragraph 57, in that he did not even

wait a reasonable period of time for a response to occur. Plaintiff had no intention of allowing the grievance procedure to work, and to avoid unnecessary litigation. Rather he claims that the states procedural policies were not followed, and therefore, according to his "fundamentally flawed" argument, his due process rights were violated. Simply put, violations of state procedures do not create any federal constitutional problems in the context of the DOC's A.D. 9. 6. See Hunnicutt v. Armstrong, Ruling at 29-30 (dismissing similar claims under 28 U.S.C. § 1915(e)(2)(B)(ii)).

Applying these principles to the facts of this case, and to the conduct of the individual defendants makes it clear that the defendants are not liable. Defendant Hughes merely answered a grievance, which had already been reviewed and answered by Nurse Badura. Nurse Hughes is not alleged to have denied plaintiff any medication, and any review of the medication records by her led her to believe in her professional judgment that plaintiff's medication issue was not an emergency. In view of the total lack of any alleged injury, her professional judgment is totally correct. Major Coates merely notified plaintiff that he believed that proper notifications to the inmate population were made consistent with A.D. 9.6. These are all state procedural issues under A.D. 9.6 policy and procedure, and do not in any way constitute the violation of a constitutional right.

Any claim for failure to comply with institutional policy or rules should be dismissed pursuant to 28 U.S.C. § 1915(e) (2) (B) (ii).



**B.**    **The Eleventh Amendment Bars Money Damages Against The Defendants In Their Official Capacities**

A suit against the defendants in their official capacities for money damages is in effect against the State of Connecticut and is barred by the Eleventh Amendment to the United States Constitution.  Edelman v. Jordan, 415 U. S. 651, 663  (1974).  Even if the State is not specifically named as a defendant, the State may nevertheless be the real party in interest if State funds would be used to satisfy any damage award.  See, Ford Motor Co. v. Dept. of Treasury, 323 U. S. 459, 464 (1945).  Thus, when a state official is sued in his official capacity, he is an agent of the State and is therefore protected from liability for damages by the Eleventh Amendment.  Scheuer v. Rhodes, 416 U. S. 232, 237-38 (1974).

There are exceptions to the above general rule, for example, when a State voluntarily waives its immunity through legislation, or where Congress has specifically abrogated this immunity to ensure the equal protection of the laws for all citizens.  See, Fitzpatrick v. Bitzer, 427 U. S. 445, 451-56 (1976).

Neither of the exceptions apply here because there is no indication that the State of Connecticut has waived its immunity and consented to be sued and, it is clear that Congress did not intend to abrogate the sovereign immunity of the states when it enacted the Civil Rights Act, 42 U.S.C. § 1983.  Accordingly, the action against the defendants in their official capacities for money damages  should be dismissed.

**C.**    **Plaintiff Has Failed to Sufficiently Allege The Direct Personal Involvement  Of  Defendants  Commissioner  Lantz,  Coates,**

25



### Dumas, Wollenhaupt and Hughes and Thus they Are Entitled to Dismissal as a Matter of Law

Plaintiff alleges he wrote to Commissioner Lantz once on April 18, 2003, and he attaches a letter he represents he sent to the Commissioner. Plaintiff makes no other allegations against the Commissioner. The other supervisory defendants, Coates, Dumas, Wollenhaupt and Hughes are named simply because they worked as supervisors at Northern CI. Accordingly, judgment should enter in their favor because plaintiff has failed to allege or prove their personal involvement.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Sec. 1983." McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282 (1978). "The general doctrine of respondent superior does not suffice and a showing of some personal responsibility of the defendant is required." Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060 (2d Cir. 1989).

Supervisory officials may be "personally involved" within the meaning of 42 U.S.C. Sec. 1983 when their conduct is tantamount to actual participation in the alleged deprivation. Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). "A plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986); Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). This the plaintiff has not done.

Absent supporting factual allegations, the Court should not assume that the supervisory defendants were personally involved in the alleged violation of plaintiff's constitutional rights simply because of their positions. See Monell v. New York City, Dept. of Social Services, 436 U.S. 658, 692-95, 98 S.Ct. 2018, 2036-38 (1978) (Respondeat superior is not applicable in Sec. 1983 action.) The Second Circuit Court of Appeals has stated:

We have construed personal involvement for these purposes to mean direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates.

Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

"It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." Higgins v. Artuz, 1997 U.S. Dist. LEXIS 12034, 94 Civ. 4810, 1997 WL 466505 at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, D.J.) (quoting Greenwaldt v. Coughlin, 1995 U.S. Dist. LEXIS 5144, 93 Civ. 6551, 1995 WL 232736 at *4 (S.D.N.Y. Apr. 19, 1995)); accord, e.g., Ramos v. Artuz, 2001 U.S. Dist. LEXIS 10327, 00 Civ. 0149, 2001 WL 840131 at *7(S.D.N.Y. July 25, 2001) (Swain, D.J. & Pitman, M.J.) ("Notwithstanding the fact that a supervisory official may be held liable for failing to remedy a constitutional violation after learning of the violation through a report or appeal, inaction following receipt of letters from a prisoner regarding alleged violations does not automatically render an official personally liable under Section 1983. . . . District courts have generally been reluctant to find personal liability where a prison official's involvement is limited to the receipt of a prisoner's letters or complaints. "). Watson v. McGinnis, 964 F. Supp. 127, 130 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.)("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability. Thus, **where a supervisory official like the Commissioner of Corrections or a prison Superintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable.**

                                     ***

Thus, if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that §1983 does not impose respondeat superior liability.

Walker v. Pataro, 2002 U.S. Dist. LEXIS 7067 ( S.D.N.Y.2002).

Under the facts and circumstances of this case, therefore, the plaintiff's letter to Commissioner Lantz is totally insufficient as a matter of law to constitute a basis to hold the Commissioner personally liable. Moreover, plaintiff's April 1, 2003 inmate "Request" to Major Coates is similarly insufficient to put the major on notice of clearly unconstitutional conduct taking place

at Northern CI. Plaintiff's request to hold liable the supervisory defendants, Lantz, Coates, Dumas, Wollenhaupt, and Hughes, simply based on writing a letter, request or grievance to these individuals is insufficient as a matter of law, and is tantamount to holding these people responsible merely for being supervisors. Here, plaintiff insisted to supervisory officials that Trombly be kept 200 feet away from him (SAC at p. 67), and that he should be "disciplined" for staff misconduct. See Plaintiff's request to defendant Dumas dated March 16, 2003. It is absurd to think that in the maximum security environment of Northern CI that an inmate could demand that a particular staff member be enjoined from approaching with 200 feet of an inmate. Further, the plaintiff's constitutional rights are not violated by the decision that a staff member acted appropriately, within the scope of his employment, and does not merit any staff discipline. Accordingly, the action should be dismissed as to these defendants.

**D.      No Injunction Is Warranted As There Is No Irreparable
          Injury And Any Alleged Harm Is Remote And Speculative**

As this Court stated in its March 4, 2004 Ruling, "the court concludes that the plaintiff has failed to allege that he will suffer irreparable harm if his requests for injunctive relief are not granted." Ruling at 6. The Court's conclusion is entirely correct, even when reading plaintiff's allegations liberally for the purpose of the instant motion to dismiss. The Supreme Court has long held that injunctive relief is an "extraordinary remedy". Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-12 (1982). In order to grant either a preliminary injunction or a temporary restraining order, the plaintiff must demonstrate:

> [N]ot only that he is likely to suffer irreparable injury if relief is denied but that
> there is either (1) a likelihood of success on the merits or (2) a sufficiently serious
> question going to the merits to make them a fair ground for litigation, with a
> balance of hardships tipping decidedly in the plaintiff's favor.

Proctor & Gamble Co. v. Cheesborough-Pond's, Inc., 747 F.2d 114, 118 (2d Cir. 1984).

28

A showing of irreparable harm is "an absolute requirement for an award of injunctive relief." Stewart v. U.S. Immigration and Naturalization Service, 762 F.2d 193, 199 (2d Cir. 1985). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough to justify injunctive relief." Id. The plaintiff must establish that "the alleged threats of irreparable harm are not remote or speculative but are actual and imminent." New York v. Nuclear Regulatory Commission, 550 F.2d 745, 775 (2d Cir. 1977). Baur v. Veneman, 352 F.3d 625, 633 (2d Cir. 2003)(the asserted injury must be "concrete and particularized" as well as "actual or imminent, not 'conjectural' or 'hypothetical.'" citing Lujan, 504 U.S. at 560.)

Plaintiff's claim for injunctive relief is also barred by the limitations on injunctive relief contained in the PLRA. Not only does the PLRA require actual physical injury, and complete exhaustion of administrative remedies, but also, prohibits federal court from entering intrusive injunction orders in the absence of ongoing constitutional violations. In light of the fact that this Court on March 4, 2004 found no underlying constitutional violation, 18 U.S.C.§3626 prohibits the entry of an injunction in this case. 18 U.S.C. § 3626 provides in part, as follows:

Appropriate remedies with respect to prison conditions
(a) Requirements for relief.
  (1) Prospective relief.
  (A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

The PLRA also requires the termination of prospective injunctive relief, such as consent decrees, upon a motion for termination under 18 U.S.C. §3626(b), unless findings are made that prospective relief remains necessary to correct ongoing violations of a federal right and that the relief is narrowly drawn and the least intrusive means to correct the violation. See 18 U.S.C. § 3626(b)(3). See also Benjamin v. Fraser, 264 F.3d 175, 178 (2d Cir 2001). In view of the continuous and ample written documents written by plaintiff, either in the form of requests, letters, inmate grievances, or pleadings, memoranda or other moving papers in this Court and the Court of Appeals, together with the lack of any allegation on any other interruption in plaintiff's medication other than March 16, 2003, or the single denial of a shower on April 11, 2003, there is no evidence of ongoing constitutional violations or any irreparable harm to plaintiff. Accordingly, any and all claims for declaratory and injunctive relief should be dismissed.

**E.**     **Qualified Immunity Bars Any And All Claims For Money Damages As To The Defendants in Their Individual Capacities**

Here, because the conduct of defendants did not violate clearly established statutory or constitutional rights, the defendants are entitled to qualified immunity. Indeed, because there was no underlying constitutional violation whatsoever, there is no need to address the qualified immunity question. However, in an abundance of caution, and to preserve the defendants' affirmative defense of qualified immunity, it is the defendants' claim that they acted in an objectively legally reasonable manner, and did not violate any clearly established constitutional rights of the plaintiff.

State officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Oliviera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987); Russell, supra, 910 F.2d at 78; Gittens v. LeFevre, 891 F.2d 38, 42 (2d Cir. 1989). "The objective reasonableness test is met--and the defendant is entitled to immunity--if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995).

Qualified immunity for government officials serves not only as a defense from liability, but also to spare public officials from shouldering the burdens and expense of litigation. See, e.g., Warren v. Dwyer, 906 F.2d 70, 74 (2d Cir.), cert. denied, 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990). "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." Harlow, 457 U.S. at 817, 102 S.Ct. at 2738.

In analyzing a claim of qualified immunity, the Court must first determine whether the law alleged to have been violated was "clearly established" at the time the alleged actions occurred. Johnson v. Jones, 515 U.S. 304, ____, 115 S.Ct. 2151, 2156 (1995); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Finnegan v. Fountain, 915 F.2d 817, 823 (2nd Cir. 1990). The Court also must decide whether it was clear at the time of the alleged violations of law that an exception did not

permit the actions in question. Gittens v. LeFevre, 891 F.2d 38, 42 (2d Cir. 1989); Robison, 821

F.2d at 921.  Finally, even if it concludes that the law was clearly established, the court must

determine whether it was objectively reasonable for the official to believe that his actions did not

violate those rights. Oliveira v. Mayer, 23 F.3d 642, 648-49 (2d Cir. 1994) cert. denied 513 U.S.

1076, 115 S.Ct. 721 (1995).  The subjective motivation of the officials is irrelevant to the

inquiry. Anderson, 483 U.S. at 641; Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991).

Rather, the focus is on whether reasonable officials in the position of the defendants could have

believed their actions were lawful.  Where reasonable officials could disagree, the official is

entitled to qualified immunity. Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir. 1993).

Here, reasonable correctional officials in defendants' position would believe that they

were acting lawfully when they responded to plaintiff's grievances.  In fact, the plaintiff wrote a

fair number of requests or grievances, and each time the letters were reviewed, the issues looked

into, and the letters or requests were answered.  While plaintiff did not agree oftentimes with the

answer he received, he nevertheless was in no way chilled in his free expression of his views.

Further, he was given ample paper and supplies so that he could file the docket entries 1 through

10 in this case.  In addition he filed moving papers with the Second Circuit for a Petition for a

Writ of Mandamus to expedite this case in the district court.  These are hardly the acts of a man

whose free expression rights have been "severely chilled."  Indeed, the defendants provided

plaintiff with the necessary items to file the complaint, amended complaint, second amended

complaint, other moving papers, made numerous copies for plaintiff and arranged for them to be

mailed.  In view of this conduct by defendants, they would have no way of knowing they were

violating plaintiff's clearly established constitutional rights.  Accordingly, although it may be



unnecessary to reach this qualified immunity question, the defendants are nevertheless entitled to qualified immunity, and thus, dismissal under 28 U.S.C.§1915(e)(2)(B)(iii) is required.

## CONCLUSION

For all the foregoing reasons, and for the reasons stated in the Court's March 4, 2004 Ruling denying plaintiff's motion for a temporary restraining order and/or preliminary injunction, the defendants motion to dismiss should be granted and this case should be dismissed with prejudice.

DEFENDANTS
"John" Trombly, et.al

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: _____
Henri Alexandre
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct05412
E-Mail:  henri.alexandre@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

BY: _____
Steven R. Strom
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct 01211
E-Mail:  steven.strom@po.state.ct.us
Tel.: (860) 808-5450
Fax: (860) 808-5591

33

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 18th day

of March 2004:


     Anthony Torres, # 246027
     Northern Correctional Institution
     287 Bilton Road
     P.O. Box 665
     Somers, CT 06071


               Steven R. Strom
               Assistant Attorney General

34