FILED

2004 MAR 25 P 6:27

U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ANTHONY TORRES,                    :        Civil Action No.
        Plaintiff,                 :        3:03-CV-696
                                            (JBA)(JGM)

        v.                         :

"John" TROMBLY, et al.,            :
        Defendants.                         March 19, 2004
                                   :

## PLAINTIFF'S MOTION FOR COURT REFERRAL TO THE UNITED STATES ATTORNEY'S OFFICE - CRIMINAL DIVISION TO INVESTIGATE AND PROSECUTE, UNDER TITLE 18 OF THE UNITED STATES CODE, DEFENDANT PATRICIA WOLLENHAUPT AND DEFENSE COUNSEL FOR PERJURY AND SUBORNATION OF PERJURY

The plaintiff moves this court for an official judiciary referral to the United States Attorney's Office Criminal Division to conduct an investigation and prosecution under Title 18 of the United States Code of Defendant Patricia Wollenhaupt and defense counsel, Henri Alexandre, Assistant Attorney General, for the commission of perjury and the subornation of perjury respectively. In support of this motion the plaintiff submits the attached exhibit and the following facts:

1. On or about February 24, 2004, the defendants filed a Memorandum In Opposition To Motion For Temporary Restraining Order/Preliminary Injunction. Accompanying this specific memorandum was an Affidavit of Patricia Wollenhaupt.

2. In Paragraphs 7, 8 and 9 of the Wollenhaupt affidavit the following

-2-

statements were made:

"7). The medical records show that the plaintiff received this medication every day during the month of March 2003, including March 16, 2003."

"8). According to the Kardex on March 16, 2003, this medication was dispensed by Nurse Lynn Nordell, not Nurse Kindness as alleged by the plaintiff."

"9). A review of the plaintiff's medical records confirms that he has received and continues to receive appropriate medical care."

3.  The plaintiff points to the Second Amended Complaint, Attachment-G, Page -1, titled "Inmate Grievance Form-A, Level -1" dated March 16, 2003 filed with this federal court. Lt. Gargiulo provided the following written response to the plaintiff's administrative complaint over the wrongful obstruction of his access to his prescribed medication of that morning:

"Inmate Torres, I checked with medical staff and was informed that you refused your medication today (16 March 2003) and was shown paperwork documenting that fact. Medical staff is aware of the fact that you did not receive your medication due to your refusal to follow lawful orders from Officer Trombly."

-4-

4. The plaintiff also points to the <u>Second Amended Complaint</u>, Attachment-G, Page-<u>5</u>, titled "Inmate Grievance Form-A, Level-1" dated March 16, 2003 (response dated April 25, 2003) filed with this federal court. Acting Major (William) Faneuff provided the following written response to the plaintiff's administrative complaint over the wrongful obstruction of his access to his prescribed medication on the morning of March 16, 2003:

"Lt. Gargiulo looked into your claim and was informed by medical staff that you refused your medication on March 16, 2003. There is paperwork documenting this fact. Medical staff are aware that you did not receive your medication due

-5-

to your refusal to follow
lawful orders from C/O
Trombly."

5. The plaintiff also points to
Paragraph - 28 through 31 of the
Second Amended Complaint for background
on the sequential order of events
involving the correctional officer supervisor's
administrative investigation of the plaintiff's
complaint on March 16, 2003.

6. It is now impossible for
Nurse Patricia Wollenhaupt to erase
the perjury she had committed in
her federal affidavit dated February
24, 2004. It is also clear that
Nurse Wollenhaupt had unlawfully
altered the plaintiff's medical records
and other documents within her medical
office at the Northern prison in an

attempt to cover-up the defendants unconstitutional conduct as described in detail in the Second Amended Complaint.

7. For additional background on the unconstitutional and unlawful conduct of Nurse Patricia Wollenhaupt at the Northern prison, the plaintiff recommends that this court carefully examine the attached exhibit titled Affidavit of Anthony Torres in Support of Motion in Limine #3 dated July 31, 2003, consisting of 18-pages, which was filed in the civil action TORRES v. BUTLER, et.al., Docket # X07-CV-02-79502-S, Connecticut Superior Court, Judicial District of Tolland at Rockville. (Judgment for the defendants. Currently on appeal to the state Supreme Court on pre-appeal motion issues — A.C. # 25183). Please

-7-

read Paragraphs - 4 through 12, and also 16 through 19 of the Torres affidavit.

WHEREFORE, the plaintiff's motion for court referral to the United States Attorney's Office - Criminal Division to investigate and prosecute, under Title 18 of the United States Code, should be granted.

Dated: March 19, 2004    Respectfully submitted,

ANTHONY TORRES #246027
(Pro Se Plaintiff)
Northern Correctional Institution
287 Bilton Road
Post Office Box - 665
Somers, CT 06071

CERTIFICATION

This is to certify that a true copy of the above motion for referral was mailed, postage prepaid, on this 19th day of March 2004, pursuant to Rule-5(b) of the FRCP, to Henri Alexandre and Steven R. Strom, Asst. Attorney General, Office of the Attorney General, 110 Sherman Street, Hartford, CT 06105.

ANTHONY TORRES #246027
(Pro Se Plaintiff)



EXHIBIT

*(COPY)*

Docket No. X07-CV-02-79502-S

ANTHONY TORRES,
    Plaintiff,

     v.

MAURICE BUTLER, et al.,
    Defendants.

:   Connecticut Superior
:   Court

:   Complex Litigation
    Docket at Tolland

   July 31, 2003

# AFFIDAVIT OF ANTHONY TORRES IN SUPPORT OF MOTION IN LIMINE #3

    I, ANTHONY TORRES, being duly sworn, deposes and says:

    1. I am the pro se plaintiff in the above-captioned civil action and I submit this sworn affidavit in support

EXHIBIT



of my motion in limine #3 to bar any
and all Department of Correction (DOC)/
University of Connecticut (UCONN) medical
and mental health records pertaining to
me at the civil trial.

2. I have been incarcerated at
the Northern Correctional Institution in
Somers, Connecticut during the period of
October 1999 through February 2000 and,
again, from September 2000 through the
present date of this affidavit for a
total of 39-months. Due to the
unusual lengthy period I have spent
confined at the Northern prison, I'am
in a position to provide an accurate
description of the day-to-day activities
of prison staff and inmates at the
Northern facility which is also known
as the "Control Unit."

- 2 -                    AT



3. The Northern prison is the highest security prison in the State of Connecticut which holds 400-plus security Level-Five prisoners who are classified by the DOC as "Administrative Segregation," "Security Risk Group/Gang Members" or "Death Row." None of the other 23 prison facilities spread throughout the State holds these types of classified prisoners. The DOC classification system is notorious for exaggerating the justification for the "Administrative Segregation" classification of a prisoner and is commonly used by DOC personnel throughout the State to inflict their personal vendettas against specific prisoners within the 16,000 statewide inmate population that fall in disfavor with administrators.

-3-

AT



4. Throughout the 39-months that I have been confined at the Northern prison, I was able to witness and experience various events that are very disturbing. A substantial portion of these events involved the activities of security, medical and mental health personnel assigned to the Northern prison.

5. In the Northern prison there exist an unofficial small group of personnel that are called the "Rat Pack" by the prisoners. The "Rat Pack" consist of the following individuals: Capt. William Faneuff, Capt. Maurice Butler, Lt. Joseph Casey, Lt. Robert Knapp, Lt. Michael Hollands and Chief Nurse Patricia Wollenhaupt.



6. These six individuals are very close friends and the five males, as a group, are infamous among the Northern prisoners for their swift and cold act of brutality and other abuses inflicted upon prisoners. Lt. Hollands was involuntarily transferred to another prison in early 2002 after newspaper coverage of his alleged involvement in abusing prisoners at the Northern prison.

7. Nurse Wollenhaupt's involvement in this small group is simple to explain. Her activities are to intentionally and knowingly dilute, omit, alter or falsify inmate medical records for the security personnel whenever there is a possibility that staff may face criminal or civil tort liability as a direct result of their brutality or other acts of gross misconduct they may have committed upon a prisoner. If any of Wollenhaupt's

-5-



subordinate nurses falls by the wayside
and refuses to participate with the
medical cover-up practice — they are
promptly warned by Wollenhaupt
of possible retaliation involving their
employment status and their alienation
with the security personnel if they do
not cooperate with the cover-up.

    8. No nurse at the Northern
prison can performed their duties without
the assistance of security personnel.
It's just simply impossible due to the
high-security operations of that prison.
Additionally, the nurses very safety from
certain violent prisoners is greatly
dependent upon the cooperation of the
security personnel. The prison guards
can very easily cause the violent assault
of a nurse by deliberately looking the
other way or being purposely careless if

-6-



they feel that the nurse in question is not a "team player." The definition of the term "team player" is "all-staff-against-the-prisoners." Any nurse viewed by a guard as providing too much or friendly medical service to prisoners is immediately suspect and reported to Chief Nurse Wollenhaupt for scrutiny of their loyalty.

9. The above described practice is no different with the mental health personnel at the Northern prison without Wollenhaupt's involvement. It is a well-established unofficial policy for the Mental Health Unit to fully cooperate with the security personnel regardless of the unethical behavior or practice.

10. One of the most interesting practice I've notice is that whenever

-7-



a prisoner initiates a lawsuit against
security personnel at Northern and
medical records are vital to security,
to defend themselves in court, the
Assistant Attorney General, especially
Ann E. Lynch, repeatedly calls upon
as a witness Chief Nurse Wollenhaupt
to testify in court—eventhough Wollenhaupt
never had any contact with that inmate
who is suing the security personnel.
Strangely, the very nurse(s), who may
have provided medical assistance or withheld
that service to the inmate is never called
as a witness by the Assistant Attorney
General. Only Wollenhaupt appears in
court in an attempt to read from the
questionable prisoner's medical records.

11. For an actual example:
In 2001, inmate Anthony Hollins
#127386 filed a Writ of Habeas
Corpus (Condition-of-Confinement) in

-8-



the Judicial District of Tolland at
Rockville specifically alleging Northern
security, and medical staff misconduct.
When the case was approaching an
evidentiary hearing, his special medical
meals was mysteriously cut-off by
the Medical Unit. Due to Hollins
serious lost of weight - he was
medically provided those special meals.
Hollins then learn that his weight
entries in his medical chart was intentionally
altered to erroneously show that he
had gain weight which wrongfully justified
the Medical Unit to cut-off his special
medical meals. Hollins learn about the
discrepancy in the medical chart through
an affidavit or written statement of
some kind provided by Chief Nurse
Wollenhaupt in connection to the pending
writ in Rockville court. Whenever Hollins
weight was taken, he clearly remembered
the exact entry into the file.

-9-



12. Nurse Wollenhaupt and Capt. Maurice Butler was touring together the Northern's One-West Housing Unit where inmate Hollins and I were confined in. Through his cell door, Hollins addressed Wollenhaupt about the incorrect weight entered in his medical records that caused the cut-off of his special medical meals. Wollenhaupt, in the physical presence of Capt. Butler, laugh and stated to Hollins that he (Hollins) got it wrong. The weight entered was correct and she walked away with Butler both laughing. Wollenhaupt then state out loud to Hollins "It doesn't pay to take us to court Hollins. It just doesn't pay asshole!"

-10-



13. Another example. This time involving a mental health staff member: During one evening between September 7, 2001 and September 10, 2001. I was confined in the Northern's One-East Housing Unit, Cell #201, when Mr. Powell, a Mental Health Clinical Worker approached my cell door and quietly made an unethical proposal to me. He knew that I was successful in obtaining a single-cell at Northern and that I was in a single-cell at that time of the approach. He quietly propose that I participate in an elaborate scheme to deceive the prison administration at Northern by "faking" mental illness. In return for the deception, Mr. Powell would aid in the scheme by providing me different types of psychotropic drugs to create a deceptive mental health chart that would "permanently guarantee" me a

-11-



single cell status at Northern.

14. Mr. Powell further stated that the prisoners in Northern would give an "arm-and-a-leg" for those drugs for recreational purposes and that I would receive my permanent single-cell status if he (Powells) gets his creative mental health paperwork on me. Powells also stated to me "We all need to play the game — you know what I mean?" I responded by stating to Mr. Powells that what he was proposing, that I "fake" a mental illness for a permanent single-cell status classification was "unethical." Mr. Powells responded angrily, "Unethical?" and walked away from my cell door.

15. Shortly, thereafter, I reported this very incident to Kenneth Speyer, Staff Attorney for the Inmates' Legal

-12-



Assistance Program, However, at the time
of the above incident with Mr. Powell,
I had no knowledge of his name and
simply gave Attorney Speyer a physical
description of the Mental Health
Clinical worker — who I learn later
to be Mr. Powells.

16. The entries in the medical
and mental health records of prisoners
at Northern are specifically created
solely at the convenience of the
prison administration. If the security
personnel are being sued by an inmate,
the medical and/or mental health files
of that prisoner is tamper with to
accommodate the needs of the State
Attorney General's office and the Northern
security personnel to fight the lawsuit.
That is the systematic practice at the
Northern prison compound as I know it.

– 13 –



17. The tampering of prisoners' medical and mental health records was brought to the attention of Nancy Alisberg, Managing Attorney and Susan Werboff, Program Director for the Office of Protection and Advocacy for Persons with Disabilities - Department of Public Health last November 2002 after I had learn that my files was also tamper with. As of today, I still have not heard from Alisberg or Werboff concerning the prisoners' files.

18. I would not be aggressively pursuing this issue regarding the manipulation of the medical and mental health files at the Northern prison if the matter had occurred to only one prisoner such as Anthony Hollins. However, when it also happened to me, I seriously wonder on how extensive and widespread the

-14-



tampering practice must be at Northern.
I also have personally overheard
prisoners talk about the tampering of
their medical records by Nurse Wollenhaupt
and also the manipulation of mental health
files by the Mental Health Unit.

19. It is highly strange that all
these prisoners' complaints have been
surfacing and no independent investigation
had been initiated to determine the
validity of those allegations on record
tampering at the Northern prison.

20. The court should note that
the alleged conduct by the medical staff,
as described in this affidavit, and the
federal courts' failure to address the
issue, has been officially reported to the
United Nations Human Rights Commission.
The U.N. Secretary-General in New York

- 15 -



had forwarded the complaint to the office of the U.N. High Commissioner for Human Rights in Geneva, Switzerland for processing.

21. It is expected that the American ambassador to the United Nations will be served by the Commission with a copy of the complaint pursuant to the provisions within the <u>International Covenant on Civil and Political Rights</u>. Within three (3) months, thereafter, the United States Government must respond to the complaint as a first step.

22. I bring this issue to the court's attention to emphasize the seriousness of this matter and respectfully urge this court to demonstrate caution when dealing with those questionable medical and/or mental health records.



## A F F I R M A T I O N

Under the penalty of perjury, I hereby affirm, that the aforesaid statements are true and correct to the best of my knowledge and believe.

Dated: July 31, 2003 _____    _Anthony Torres_

ANTHONY TORRES #246027
(Pro Se Plaintiff)
Northern Correctional Institution
287 Bilton Road
Post Office Box - 665
Somers, CT 06071


Subscribed and sworn to before me:

Dated: 7-31-03 _____    _____
Notary Public


-17-    AT



<u>CERTIFICATION</u>

This is to certify, that a true copy of the above affidavit was mailed, on this <u>8th</u> day of <u>August</u> 2003, pursuant to <u>Conn. Prac. Bk., Sec. 10-12</u>, to Ann E. Lynch, Asst. Attorney General, Office of the Attorney General, 110 Sherman Street, Hartford, CT 06105.

ANTHONY TORRES #246027
(Pro Se Plaintiff)

—18—

AT