*rule*

United States District Court
District of Connecticut
FILED AT    NEW HAVEN

6/29/20 04

Kevin F. Rowe, Clerk

By. B. Codd

Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Anthony Torres                :
                              :
v.                            :    No. 3:03cv696 (JBA)
                              :
John Trombly, et al.          :

### Ruling on Defendant's Motion to Dismiss [Doc. # 28]

The plaintiff, Anthony Torres ("Torres"), currently confined
at Northern Correctional Institution in Somers, Connecticut,
brings suit pursuant to 42 U.S.C. § 1983. Defendants "John"
Trombly and Eric Purvis, Correctional officers; Debbie Kindness,
Correctional Nurse; "John" Dumas, Lieutenant and Unit Manager for
the NCI-One East Housing Unit; Thomas Coates, Administrative
Major and Acting Warden for the NCI; Theresa C. Lantz,
Commissioner for the Connecticut State Department of Correction;
Patricia Wollenhaupt, Correctional Head Nurse; and Sheila Hughes,
Correctional Head Nurse, have moved to dismiss the entirety of
the complaint. For the reasons discussed below, defendants'
motion is granted in part and denied in part.

### I.  Background

Plaintiff, an inmate at Northern Correctional Institution in
Somers, Connecticut, is diagnosed with high blood pressure and
prescribed medication for the condition to be taken daily.
Plaintiff's complaint alleges that on March 16, 2003, defendants
Kindness and Trombly withheld his high blood pressure medication

1

because he refused to comply with Trombly's order to put on a tee shirt prior to receiving medication.  See Second Amended Complaint [Doc. # 14] at ¶¶ 18-20.  Torres states that on March 17, 2003, Kindness again informed him that he must put on a tee shirt prior to receiving his medication, but when he refused, she nonetheless gave him his medication.  Id. at ¶ 34.  As a result of the March 16, 2003 incident, Torres has, in Counts One and Two, charged defendants Trombly and Kindness with unconstitutionally interfering with the dispensing of his medication, and conspiracy to deprive him of medical care.  Count Three alleges that Trombly and Kindness conspired to falsify government documents and medical records to cover up their misconduct.  Counts Four and Five allege that Dumas, Coates, and Lantz were deliberately indifferent to his First Amendment petition rights, as they failed to supervise and train Officer Trombly and failed to respond to his grievances.  In Count Six, Torres states that Wollenhaupt and Hughes were deliberately indifferent to his medical needs as they failed to properly train and supervise nurse Kindness.

Torres subsequently attempted to file emergency grievances in response to the denial of medication, and claims that Trombly and Purvis wrongfully intercepted his grievance, although he was later able to deliver the grievance to another correctional official.  As a result of this incident, Count Seven charges

2

Purvis and Trombly with wrongfully intercepting his emergency grievance.

Torres also claims that on April 11, 2003, Trombly verbally harassed him, taunted him, and denied him access to his regularly scheduled shower, in retaliation for Torres' submission of grievances to prison administration officials. Id. at ¶ 39. As a result, he claims that he was unable to shower for five days. In addition, Torres alleges that the exercise of his constitutional right to petition the government for redress have been chilled by the retaliatory conduct of defendant. Count Eight thus charges Trombly with unconstitutional retaliatory conduct, and Count Nine alleges that Trombly falsified the DOC inmate shower records to conceal the retaliatory conduct.

Plaintiff seeks a declaratory order as to defendants John Trombly and Debbie Kindness that the withholding of medication in response to his refusal to wear a tee shirt deprived plaintiff of his "constitutional and statutory protected rights to be secured in his person or to be free from unreasonable and unnecessary invasive involvement by the government of his attire while in his own prison cell, to be free from the infliction of cruel and unusual punishment and he has the right to due process and equal protection of the law under the First, Fourth, Ninth and Fourteenth Amendments to the United States Constitution." Id. at § VI (B). Torres also seeks an order enjoining defendants

3

Trombly, Kindness, Dumas, Coates, Lantz, Wollenhaupt, and Hughes from withholding and/or interfering with the dispensing of prescribed medication to the plaintiff. <u>Id</u>. at § VI (C). In addition, Torres seeks compensatory and punitive damages against defendants Trombly, Purvis, Kindness, Dumas, and Coates in their individual capacities for the deprivation of his constitutional rights.

## II.  Standard

When deciding a 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 513-14 (2002); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).

Under 28 U.S.C. § 1915(e)(2)(B), a "court shall dismiss the case at any time if the court determines that ... the action is

4

frivolous or malicious; . . . fails to state a claim on which relief may be granted; or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(I)-(iii).

## III.  Discussion

Defendants have moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B), on several grounds.  First, defendants argue that Torres failed to exhaust his administrative remedies, in violation of 42 U.S.C. § 1997e(a).  Second, defendants argue that plaintiff's claims for damages are barred by 42 U.S.C. § 1997e(e), because Torres failed to allege any physical injury resulting from defendants' actions.  Third, defendants argue that plaintiff's allegations, if proved, fail to establish that there was deliberate indifference to plaintiff's serious medical needs. Fourth, defendants argue that plaintiff's retaliation claims are baseless and de minimis, and the voluminous documentation of grievances that Torres attached to his complaint belies his claim that his first amendment rights were chilled. Fifth, defendants argue that verbal harassment does not constitute a constitution violation.  Sixth, defendants argue that Torres has failed to state a claim for conspiracy pursuant to 42 U.S.C. § 1985(3). Finally, defendants argue that as to plaintiff's remaining claims, (a) the claim for failure to comply with institutional

5

policy or rules should be dismissed pursuant to 28 U.S.C. §
1915(e)(2)(B)(ii); (b) the Eleventh Amendment bars money damages
against the defendants in their official capacities; (c)
plaintiff has failed to sufficiently allege the direct personal
involvement of defendants Lantz, Coates, Dumas, Wollenhaupt, and
Hughes and thus they are entitled to dismissal as a matter of
law; (d) injunctive relief is unwarranted as there is no
irreparable injury and any alleged harm is remote and
speculative; and (e) qualified immunity bars any claims for money
damages as to the defendants in their individual capacities.
The Court will address each argument in turn.

   **A.  Exhaustion**

   The Prison Litigation Reform Act provides that "no action
shall be brought . . . until such administrative remedies as are
available are exhausted."  42 U.S.C. § 1997e(a).  Under the Act,
exhaustion is mandatory, and as long as administrative remedies
are available, courts are not at liberty to excuse the failure to
exhaust.  As the Supreme Court explained in <u>Porter v. Nussle</u>, 534
U.S. 516, 523-524 (2002), "Once within the discretion of the
district court, exhaustion in cases covered by § 1997e(a) is now
mandatory.  All 'available' remedies must now be exhausted; those
remedies need not meet federal standards, nor must they be
'plain, speedy, and effective.'  Even when the prisoner seeks
relief not available in grievance proceedings, notably money

damages, exhaustion is a prerequisite to suit."

Here, Torres has alleged three related incidents of
misconduct, and has submitted the administrative grievances he
filed with regard to each of these incidents.

Withholding of Medication:  The first incident involved the
alleged the failure of the defendants to dispense his blood
pressure medication on March 16, 2003. On March 16, 2003, Torres
filed both a line emergency grievance and a health emergency
grievance.  Torres's Level 1 line emergency grievance alleged
that Trombly "unconstitutionally interfered, blocked and
obstructed the nurse from dispensing the blood pressure
medication to me under the pretext and falsification of a 'house
rule' that I am required to wear a Tee shirt while inside my cell
during the dispensing of the medication."  See Inmate Grievance
Form A, Level 1, March 16, 2003 [Doc. 14, Ex. G].  Torres
received a written response to his Level 1 line emergency
grievance at 10:30 PM on March 16, 2003, stating that the
reviewer "checked with medical staff and was informed that you
refused your medication today . . . .  Medical staff is aware of
the fact that you did not receive your medication due to your
refusal to follow lawful orders from Officer Trombly."[1]  See

---

[1]It appears as though Torres filed more than one line
emergency grievance involving this incident. Also attached to
Torres' complaint is the identical March 16, 2003 line emergency
grievance, which includes an official note stating that it was
received on March 31, 2003 and type-written response with formal

Inmate Grievance Form A, Level 1, March 16, 2003 [Doc. 14, Ex. G]. This response, unlike a later response to Torres' health emergency grievance, did not conclude that the grievance was not an emergency and did not direct Torres to resubmit it as a regular grievance. On March 17, 2003, Torres filed a Level 2 Line Emergency appeal regarding the failure to provide medication. On March 25, 2003, Torres filed a Level 3 line emergency appeal, stating that the Department of Corrections failed to respond to his Level 2 appeal. There is no record that Torres received a response.

Under the Connecticut Department of Corrections Administrative Directive, emergency grievances "shall receive a response within eight (8) hours followed by a written response within three (3) business days. An emergency grievance that requires substantive response beyond the unit or that is appealed to Level 2 or Level 3 shall receive a response within two (2) business days and a written response within five (5) business days." DOC-Administrative Directive 9.6 [Doc. # 14, Ex. B] at ¶(18)(C). Thus, Torres fully complied with the administrative filing requirements as to his line emergency grievance. Because Torres filed an emergency grievance, as he was entitled to do, the filing and response times were shortened under the

-------------------

disposition issued on April 25, 2003.

administrative guidelines. Accordingly, defendants' argument that
Torres could not possibly have exhausted his administrative
remedies within one month after filing his initial grievance
lacks merit.

Although Torres clearly exhausted the line emergency
grievance process as to his claim of Officer Trombly's
misconduct, the administrative guidelines also provide for a
separate review process, involving a separate health services
review authority, of all medical-related grievances.  The
guidelines provide that "all health care related grievances shall
be placed in a box designated for health services grievances and
shall be processed by the designated Health Services grievance
Coordinator." DOC-Administrative Directive 9.6 [Doc. # 14, Ex. B]
at ¶ 14.  Thus, simultaneously with the filing of his line
emergency grievance, on March 16, 2003, Torres also filed a
health emergency grievance.  See Health Emergency Grievance,
March 16, 2003 [Doc. # 14, Ex. I].  His Level 1 health grievance
alleged that Nurse Debbie Kindness failed to dispense his blood
pressure medication that morning.  In a response dated March 19,
2003, Torres' Level 1 grievance was rejected, and informed Torres
that it was not a proper emergency grievance.[2]  Torres states,

_____

[2]The administrative guidelines provide that "If a grievance
submitted as an emergency is ruled at any level not to be an
emergency, it shall be returned to the grievant stating that the
grievance is not an emergency and the reasons why.  The response
shall indicate that the grievance may be resubmitted as a regular

however, that he did not receive this response until March 26, 2003.[3]  As a result, on March 21, 2003, Torres filed a Level 2 appeal stating there was a failure to respond to his Level 1 grievance.  On March 31, 2003, Torres filed a Level 3 appeal stating no response was received from the medical unit.

There is a factual dispute as to whether Torres fully exhausted his remedies as to the health emergency grievance. While the Level 1 response is dated March 19, 2003, and thus would be within the requisite deadline for disposition of emergency grievances, Trombly asserts that he did not receive the response until March 26, 2003, and alleges that the response could not have been issued on March 19, as written, because the reviewer writes "I/M seen at IE 223 cell," but Torres states that the reviewer spoke with him for the first time on March 25, 2003 at 2:30 PM. See [Doc. 14, Ex. G].  If Torres' version of the sequence of events is accurate, then the Level 1 response was untimely under the guidelines.  Torres, moreover, would have

---

grievance."    DOC-Administrative Directive 9.6 [Doc. # 14, Ex. B] at ¶ 18(E).  The response dated March 19 did not provide reasons why Torres' grievance was not an emergency, and did not inform him that his grievance may be resubmitted as a regular grievance.

[3]On March 26, 2003, Torres submitted an Inmate Request Form stating "I'm in receipt of your response to my heath emergency - level one grievance dated 3-19-03 which is obviously false.  You had spoken to me on 3-25-03 at 2:30 PM for the fist time, which makes it impossible for you to have spoken to me on 3-19-03 or prior to that date. . ." See [Doc. 14, Ex. G].

properly exhausted his health emergency grievances, as the
guidelines provide that an inmate may file a Level 2 or Level 3
appeal one day after the authorized time limit for receiving a
response expires.  See DOC-Administrative Directive 9.6 [Doc. #
14, Ex. B] at ¶¶ 16, 17.

Because there is a factual dispute as to whether Torres
exhausted all available administrative remedies as to the March
16, 2003 incident involved the withholding of medication, it is
not properly the basis for a motion to dismiss.[4]

Interference with filing of emergency grievance:  In a
separate incident on March 16, 2003, Torres alleged that Purvis
and Trombly attempted to prevent him from filing an emergency
grievance.  See [Doc. # 14, Ex. H].  As a result, Torres
submitted an informal resolution request on March 16, 2003.  On
March 31, 2003, Torres received a response stating that he had
already filed the emergency grievance at issue twice, and
directing Torres to attempt to resolve the issue informally using
the chain of command.  On April 4, 2003, Torres filed a Level 1
Line Grievance alleging interference with delivery of the

---

[4]As the Second Circuit has concluded, § 1997(e) lacks the
"sweeping and direct language that would indicate a
jurisdictional bar rather than a mere codification of
administrative exhaustion requirements." Richardson v. Goord, 347
F.3d 431, 434 (2d Cir. 2003) (quoting Casanova v. Dubois, 289
F.3d 142, 146 (1st Cir. 2002)).  Thus, exhaustion is an
affirmative defense, not a jurisdictional requirement. See id.

emergency grievance on March 16, 2003 and stating that the
informal grievance was improperly handled.  In a document dated
April 2, 2003 (which Torres asserts should in fact be April 4,
2003), Torres' grievance was returned without disposition, on
grounds that Torres should continue to attempt to resolve his
dispute with Trombly informally using chain of command.  Again on
April 8, 2003,  Torres' grievance was returned without
disposition.  On April 11, 2003, Torres filed a Level 2 grievance
alleging that the NCI Grievance Coordinator refused to process
his Level 1 grievance dated April 4, 2003.  On May 13, 2003,
Torres filed a Level 3 Appeal, stating that he received no
response to the Level 2 appeal.

     The regulations provide that "[a] grievance may be returned
without disposition to the inmate for failure to attempt Informal
resolution, or to adequately explain why a response to the Inmate
Request Form is not attached. . . .  "Returned without
disposition" means that the grievance has not been properly
filed; it may be re-filed when the error is remedied."
DOC-Administrative Guidelines [Doc. # 14, Ex. B] at ¶10(H).  The
documentation Torres submitted demonstrates that he filed an
informal inmate request form on March 16 and received a response
on March 31.  Under the guidelines, he was thus entitled to
subsequently file a grievance, and because the return of his
grievance without disposition lacked support in the guidelines,

12

he was entitled to appeal to Levels 2 and 3. See id. at ¶ 6

("[T]he grievance process must be utilized for . . . any denial

of access to inmates to the Inmate Grievance Procedure . . . .").

Because Torres filed all available appeals after receiving no

response to his grievances, he properly exhausted his

administrative remedies as to his interference claim.

Verbal Harassment and Retaliation:  The third incident

involved allegations that Trombly verbally harassed Torres and

retaliated against him by refusing to allow Torres to shower.  On

April 11, 2004, Torres filed an inmate request form regarding

this incident, and on April 14, 2003, Torres filed a Level 1 line

emergency grievance alleging staff misconduct involving a

harassing intercom call, retaliatory loss of shower and

falsification of DOC records.  Torres then brought suit in this

Court on April 16, 2003.  Although Torres subsequently filed

further administrative appeals regarding this incident, he

clearly did not exhaust his administrative remedies prior to

bringing suit.  Accordingly, Counts Eight and Nine, which are

based solely on Torres' claims of verbal harassment and

retaliation, are dismissed for want of exhaustion.  Count Four,

which in part alleges that defendants Dumas and Coates failed to

respond to his grievance involving Trombly's retaliatory conduct,

is likewise dismissed as to this claim for failure to exhaust.

Several other claims in this suit, although related to the

13

above incidents, were similarly not exhausted.  In particular, in
Counts Four, Five, and Six, Torres alleges that Dumas, Coates,
Lantz, Wollenhaupt and Hughes failed to properly train and
supervise Trombly and Kindness.  These claims, which center on
the "application" or "existence or substance" of "policies, rules
and procedures" of the institution, are subject to the grievance
process, see id. at ¶ 6(A), and must be exhausted before bringing
suit.  As Torres has not exhausted the available administrative
remedies as to these claims, Counts Four, Five, and Six are
dismissed.

### B.  Physical Injury Requirement for Damages Claims

Pursuant to 42 U.S.C. § 1997e(e), "no Federal civil action
may be brought by a prisoner confined in a jail, prison, or other
correctional facility, for mental or emotional injury suffered
while in custody without a prior showing of physical injury."
The Second Circuit has concluded that Section 1997e(e) "applies
to claims in which a plaintiff alleges constitutional violations
so that the plaintiff cannot recover damages for mental or
emotional injury for a constitutional violation in the absence of
a showing of actual physical injury."  Thompson v. Carter, 284
F.3d 411, 417 (2d Cir. 2002).  Section 1997e(e) does not,
however, "limit the availability of nominal damages for the
violation of a constitutional right or of punitive damages."  Id.
at 418.  Nor does the section bar a plaintiff from obtaining

14

declaratory or injunctive relief. See id.

The physical injury "must be more than de minimus [sic], but need not be significant." Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quotation omitted) (alteration in original). Here, Torres has not alleged any physical injury resulting from the denial of his medication on March 16, 2003. Accordingly, his claim for compensatory damages against defendants Trombly, Purvis, Kindness, and Dumas is dismissed.

### C. Deliberate Indifference

Defendants also argue that Torres failed to allege facts suggesting an unconstitutional denial of medical care, as his allegations do not support a claim of deliberate indifference to his serious medical need.

It is well established that deliberate indifference to a serious medical need "constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." See Estelle v. Gamble, 429 U.S. 97, 104 (1976). The indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. at 104-05 (1976) (citation omitted). To establish a cognizable claim, the deprivation alleged must be objectively serious, and the prison official must have a "sufficiently culpable state of mind." Farmer v. Brennan,

511 U.S. 825, 834 (1994).  The deliberate indifference standard
is thus satisfied where "the official knows of and disregards an
excessive risk to inmate health or safety; the official must both
be aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw
the inference." Id.

The Second Circuit has identified several factors that are
highly relevant to the inquiry into the seriousness of a medical
condition: "'[t]he existence of an injury that a reasonable
doctor or patient would find important and worthy of comment or
treatment; the presence of a medical condition that significantly
affects an individual's daily activities; or the existence of
chronic and substantial pain.'" Chance v. Armstrong, 143 F.3d
698, 702 (2d Cir. 1998) (citation omitted).  As the Second
Circuit has recognized, the inquiry into whether an inmate has a
serious medical need is necessarily fact-intensive.

The deliberate indifference standard is akin to
recklessness.  It requires that the prison official "knew of and
disregarded the plaintiff's serious medical needs." Chance, 143
F.3d at 703.  Thus, mere negligence does not give rise to a
constitutional claim; instead, the prison official must act with
"a conscious disregard of a substantial risk of serious harm."
See Hathaway v. Coughlin, 99 F.3d 550, 552 (2d Cir. 1996)
(citation omitted).  Where deliberate indifference to a serious

16

medical need is asserted against a prison guard, the claim may be in the form of intentional interference with prescribed treatment.  See Estelle, 429 U.S. at 104-05.

Here, Torres has alleged that he suffers from high blood pressure and is prescribed medication for this condition, and that defendants withheld his medication on March 16, 2003.  While Torres makes no allegation that he was in fact harmed by the denial of medication, at this stage of proceedings, there are no facts in the record on which to evaluate whether Torres' medical condition is sufficiently serious to give rise to a constitutional violation, and whether the withholding of medication on one day would carry a substantial risk of serious harm.  At the 12(b)(6) stage, "[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Moreover, as Torres is a pro se litigant, his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Estelle, 429 U.S. at 106 (quotations omitted).  At this stage of the proceedings,

17

therefore, it cannot be said to be beyond all doubt that Torres cannot establish that the defendant's actions carried a magnitude sufficient to establish an Eighth Amendment violation.

### D.  Conspiracy Claim

Count Two of plaintiff's complaint alleges a conspiracy by Trombly and Kindness to falsify Torres' medical records to conceal their withholding of medication, and is brought under 42 U.S.C. § 1985(3).  This statutory provision does not "apply to all tortious, conspiratorial interferences with the rights of others." Griffin v. Breckenridge, 403 U.S. 88, 101 (1971). Instead, consistent with the legislative purpose, it requires, "as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment."  Id. at 102.  Torres has made no allegation of discriminatory intent by Trombly or Kindness, and in his response, withdraws his claims pursuant to § 1985(3).  By agreement, and as Torres has failed to state a claim under 42 U.S.C. § 1985(3), Count Two is dismissed.

### E.  Interception of Emergency Grievance

Defendants also argue that Torres' allegations that Purvis and Trombly wrongfully intercepted his emergency grievance fail to state a claim on which relief can be granted, because Torres acknowledges that he filed his grievance later that day, and therefore was not harmed by defendants' action.  The Court

18

construes plaintiff's claim as one of interference with his First
Amendment right to petition the government for redress of
grievances.  In order to satisfy this claim, Torres must
demonstrate that a defendant caused "actual injury," i.e., took
or was responsible for actions that "hindered [a plaintiff's]
efforts to pursue a legal claim," <u>Monsky v. Moraghan</u>, 127 F.3d
243, 247 (2d Cir. 1997) (quoting <u>Lewis v. Casey</u>, 518 U.S. 343,
349 (1996)).  The requirement of actual injury "derives
ultimately from the doctrine of standing." <u>Lewis</u>, 518 U.S. at
349.

Torres has not alleged that he has been injured by Trombly
and Purvis's interception of his emergency grievance on March 16,
2003, and in fact has documented that he filed both an emergency
health grievance and an emergency line grievance on that day.  As
a result, defendants actions did not deprive Torres of his right
to petition for redress, and Count Seven thus fails to state a
claim.

### F.  Defendants' Other Arguments

Defendants' argument that the Eleventh Amendment bars money
damages against the defendants in their official capacities lacks
merit, as it overlooks the fact that plaintiff has clearly
alleged that he is suing defendants only in their individual
capacities.

Defendants also argue that qualified immunity bars any and

19

all claims for money damages as to the defendants in their
individual capacities.  State officials are immune "insofar as
their conduct does not violate any clearly established statutory
or constitutional rights of which a reasonable person would have
known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  "[E]ven
if the contours of the plaintiff's federal rights and the
official's permissible actions were clearly delineated at the
time of the acts complained of, the defendant may enjoy qualified
immunity if it was objectively reasonable for him to believe that
his acts did not violate those rights."  <u>Robison v. Via</u>, 821 F.2d
913, 921 (2d Cir. 1987).  "The contours of the right must be
sufficiently clear that a reasonable official would understand
that what he is doing violates that right. This is not to say
that an official action is protected by qualified immunity unless
the very action in question has previously been held unlawful,
but it is to say that in the light of pre-existing law the
unlawfulness must be apparent."  <u>Anderson v. Creighton</u>, 483 U.S.
635, 640 (1987) (citations omitted).  Here, the question is
whether the receipt of daily blood pressure medication
constitutes a serious medical need, and whether the deliberate
withholding of this medication on a single day constitutes an
Eighth Amendment violation.  While the Second Circuit has set
forth the relevant factors for determining whether a medical
condition is sufficiently serious to give rise to an Eighth

Amendment violation, see, e.g. Chance, 143 F.3d at 702, given the absence of facts in the record on the nature of Torres' condition or the risks of withholding of medication, it is too early to determine whether it was objectively reasonable for the defendants to believe their actions did not violate those rights.

The Court finds that the defendants' remaining arguments need not be addressed in light of the above findings.

## IV.  Conclusion

For the foregoing reasons, defendant's motion to dismiss is hereby granted in part and denied in part.  Counts Two, and Four through Nine of plaintiff's complaint are DISMISSED, and accordingly, judgment is entered in favor of defendants Dumas, Coates, Purvis, Lantz, Wollenhaupt, and Hughes. Defendants' motion is denied as to Counts One and Three of plaintiff's complaint.  Plaintiff is barred from seeking compensatory damages as to the remaining defendants.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 29th day of June 2004.

21