UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY TORRES | : | CIVIL NO. 3:03CV696(JBA)(JGM) |
| v. | : | |
| JOHN TROMBLY, ET.AL. | : | APRIL 14, 2005 |

### AFFIDAVIT OF EDWARD BLANCHETTE, M.D.

I, Edward Blanchette, being duly sworn hereby depose and say:

1. I am a physician licensed to practice medicine in the State of Connecticut since 1975.

2. I completed my residency in Medicine at Saint Francis Hospital, Hartford, Connecticut in 1977, and completed a Fellowship in Infectious Disease and Microbiology from the University of Connecticut School of Medicine in 1979.

3. I have held various positions with the Connecticut Department of Correction since 1984, including Hospital Clinical Director at the Connecticut Correctional Institution in Somers, Connecticut, Acting Director of Health Services and Clinical Practice Coordinator, and the Medical Director at the MacDougall Correctional Institution (MCI) in Suffield, Connecticut, where my duties including providing direct patient care to inmates.

4. I am presently the Director of Clinical and Professional Services for the Department of Correction. Attached hereto is a copy of my curriculum vitae, which is incorporated by reference herein.

5. In 1995-1996, the State of Connecticut, Department of Correction contracted with the University of Connecticut Health Center to provide treatment to Connecticut prisoners through an organization developed as Correctional Managed Health Care (CMHC).

6. I am familiar with the policies and practices utilized by CMHC for the purpose of providing medical treatment to prisoners in the custody of the Connecticut Department of Correction (DOC). I am also familiar with Northern CI, and the medical records of the plaintiff inmate, Anthony Torres, which I have reviewed in connection with preparing this affidavit.

7. Currently, Mr. Torres is being managed appropriately, well within acceptable standards of medical care, for a mild problem of hypertension (HTN), or high blood pressure. His blood pressure readings, however, are monitored frequently (approximately monthly, except when plaintiff refuses), and are well within acceptable limits. Indeed, they are quite good.

8. For example, at p. 102 of the plaintiff's medical record, there is an order dated 1/26/01 for "BP's q wk x 4 wk," [blood pressures weekly for four weeks] then monthly, with a goal range of <140/90. Throughout 2001 and 2002, plaintiff's blood pressure checks were regularly excellent, ranging from 112/68 to 128/80. See p. 102, attached.

9. Blood pressure checks were continued monthly throughout 2003, as well as 2004-05, although Mr. Torres on a number of occasions refused to cooperate with medical staff to have his blood pressure measured. The blood pressures which were charted around the time in question were completely within acceptable limits, with a reading of 108/70 on June 30, 2003, and 118/86 in August 2003. See p. 11 of plaintiff's medical record.

10. I have read that portion of the court's Ruling filed June 29, 2004, which indicates in part, that on the then existing court record, there was an "absence of facts in the record on the nature of Torres' condition or the risks of withholding medication," Ruling at 21, and also that "there are no facts in the record on which to evaluate whether Torres' medical condition is sufficiently

serious to give rise to a constitutional violation, and whether the withholding of medication on one day would constitute a substantial risk of serious harm."

11. In order to answer these questions I have reviewed the plaintiff's health record and can assure the court, to a reasonable degree of medical certainty, that plaintiff is not at any substantial risk of serious harm by the withholding of medication on one day. Indeed, plaintiff would have suffered no appreciable risk to his health by missing a single dose of his medication.

12. I base this conclusion on the fact that plaintiff's medical condition is not serious, but rather presents a mild case of hypertension, which is generally kept under good control, despite plaintiff's well-documents non-compliant behavior. Plaintiff is prescribed 25 mg of Hydrochlorothiazide (HCTZ) once per day. He has been prescribed such medication for some period of time, with physician's orders indicating a four month regimen ordered on 8/1/01, and periodic six month renewals thereafter. The normal dosage of HCTZ in my practice is generally 50 mg. The fact that Mr. Torres is successfully manages with a low dose of 25 mg indicates to me that he does not have a serious blood pressure problem. It may be that he could successfully be taken off the medication for a while and monitored to see if his blood pressure remains within acceptable limits without any medication. This may be difficult to manage in view of plaintiff's difficult and non-complaint behavior.

13. Hydrochlorothiazide is a diuretic and antihypertensive medication used to control high blood pressure. Plaintiff is on a preventative HTN regimen to continue to preventatively and proactively attempt to reduce the risk factors which may lead to heart disease. A large part of preventing uncontrolled high blood pressure, which is a risk factor, depends on plaintiff's own compliance with his medication regimen. Because two risk factors are being overweight and

3

having uncontrolled high blood pressure, plaintiff is prescribed the HTN protocol, which includes monthly weight checks and blood pressure. He is also prescribed a low dose of HCTZ.

14. The fact that plaintiff missed a single day of HCTZ 25 mg on March 16, 2003, which is at issue in this case, would present no appreciable risk to plaintiff's health. The therapeutic effects of the medication may be slightly diminished over 24 hour period, but would not have presented any risk to Mr. Torres. Indeed, the Medication Administration Record (MAR) for March 2003, indicates that only on March 16, 2003, was the dose refuse by plaintiff. See plaintiff's medical record pp. 248, 248 (a.). Every other day the medication was offered, taken by Mr. Torres and documented. Under these circumstances, to a reasonable degree of medical certainty, plaintiff would have experienced no significant risks to his health and his blood pressure would have remained within control during this 24 hour period of time.

15. In view of the foregoing, it would have been completely reasonable and acceptable for a nurse to simply document the refusal on the MAR and report such refusal to the medical department. Any reasonable medical professional would know that such a low dose, refused on a single occasion, would not subject a patient whose blood pressure was under control and being appropriately managed, to a significant risk of harm.

16. Indeed, at Northern CI, medication is administered by passing the pill through the slot in the door. If the inmate refuses to get up from the bed, or to get properly dressed, it would not be appropriate to enter the cell to force a medication in such an instance where there is no appreciable risk in missing a single dose, or missing occasional doses from time to time.

17. I have reviewed the MAR and refusal forms filled out by Nurse Deborah Kindness, and she followed policy and procedure appropriately. Neither she, nor her supervisor, nor any

physician would have any serious concerns of significant risk upon review the refusal of a low dose, 25 mg HCTZ, on a single day, and it would be completely reasonable under these circumstances to simply document the refusal and attempt to offer the medication the next day. The benefit of such a preventative regimen is continued general compliance over a life-long period of time for what may be a chronic, but mild condition. Occasional refusals by the patient under these circumstances do not present a significant risk of serious harm to Mr. Torres.

    I have read the foregoing and it is all true and accurate to the best of my knowledge and belief.

                                                                          /s/ Edward A. Blanchette, MD
                                                                         Edward A. Blanchette, M.D.

Subscribed and sworn to before me this 14th day of April 2005.

                                                                          Notary Public /
                                                                          Commissioner of the Superior Court