UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY TORRES | : | CIVIL NO. 3:03CV696(JBA)(JGM) |
| v. | : | |
| JOHN TROMBLY, ET.AL. | : | APRIL 19, 2005 |

### AFFIDAVIT OF DEBORAH KINDNESS

I, Deborah Kindness, being duly sworn hereby depose and say:

1. I am a nurse, licensed to practice in the State of Connecticut. I have been employed at Northern CI since it opened in March 1995.

2. In 1995-1996, the State of Connecticut, Department of Correction contracted with the University of Connecticut Health Center to provide treatment to Connecticut prisoners through an organization developed as Correctional Managed Health Care (CMHC). I am presently employed by CMHC.

3. I am familiar with the policies and practices utilized by CMHC for the purpose of providing medical treatment to prisoners in the custody of the Connecticut Department of Correction (DOC). I am also familiar with Northern CI, and the medical records of the plaintiff inmate, Anthony Torres, which I have reviewed in connection with preparing this affidavit.

4. Currently, Mr. Torres is being managed appropriately, well within acceptable standards of medical care, for a mild problem of hypertension (HTN), or high blood pressure. His blood pressure readings, however, are monitored frequently (approximately monthly, except when plaintiff refuses), and are well within acceptable limits. Indeed, they are quite good.

5.  For example, at p. 102 of the plaintiff's medical record, there is an order dated 1/26/01 for "BP's q wk x 4 wk," [blood pressures weekly for four weeks] then monthly, with a goal range of <140/90. Throughout 2001 and 2002, plaintiff's blood pressure checks were regularly excellent, ranging from 112/68 to 128/80. See p. 102, attached.

6.  Blood pressure checks were continued monthly throughout 2003, as well as 2004-05, although Mr. Torres on a number of occasions refused to cooperate with medical staff to have his blood pressure measured. The blood pressures which were charted around the time in question were completely within acceptable limits, with a reading of 108/70 on June 30, 2003, and 118/86 in August 2003. See p. 11 of plaintiff's medical record.

7.  I have read that portion of the court's Ruling filed June 29, 2004, which indicates in part, that on the then existing court record, there was an "absence of facts in the record on the nature of Torres' condition or the risks of withholding medication," Ruling at 21, and also that "there are no facts in the record on which to evaluate whether Torres' medical condition is sufficiently serious to give rise to a constitutional violation, and whether the withholding of medication on one day would constitute a substantial risk of serious harm."

8.  In order to answer these questions I have reviewed the plaintiff's health record, and I have asked the physician(s) to review the plaintiff's health record, and I have conferred with the physician(s). I can assure the court, to a reasonable degree of medical certainty, that plaintiff is not at any substantial risk of serious harm by the withholding of medication on one day. Indeed, plaintiff would have suffered no appreciable risk to his health by missing a single dose of his medication. I was aware that plaintiff's dosage was relatively low, and that his blood pressure

2

were being well managed. I knew that missing one dose would have no adverse affect on the plaintiff.

9. I base this conclusion on the fact that plaintiff's medical condition is not serious, but rather presents a mild case of hypertension, which is generally kept under good control, despite plaintiff's well-documents non-compliant behavior. Plaintiff is prescribed 25 mg of Hydrochlorothiazide (HCTZ) once per day. He has been prescribed such medication for some period of time, with physician's orders indicating a four month regimen ordered on 8/1/01, and periodic six month renewals thereafter. The normal dosage of HCTZ is generally 50 mg. The fact that Mr. Torres is successfully managed with a low dose of 25 mg indicates to me that he does not have a serious blood pressure problem. He could safely miss a dose every once and a while without any negative effects.

10. Hydrochlorothiazide is a diuretic and antihypertensive medication used to control high blood pressure. Plaintiff is on a preventative HTN regimen to continue to preventatively and proactively attempt to reduce the risk factors which may lead to heart disease. A large part of preventing uncontrolled high blood pressure, which is a risk factor, depends on plaintiff's own compliance with his medication regimen. Because two risk factors are being overweight and having uncontrolled high blood pressure, plaintiff is prescribed the HTN protocol, which includes monthly weight checks and blood pressure. He is also prescribed a low dose of HCTZ. Plaintiff has been non-compliant when he is asked to comply with having his blood pressure taken and his weight measured. On occasion I have had to report this refusal to a supervisor.

11. The fact that plaintiff missed a single day of HCTZ 25 mg on March 16, 2003, which is at issue in this case, would present no appreciable risk to plaintiff's health. The therapeutic

3

effects of the medication may be slightly diminished over 24 hour period, but would not have presented any risk to Mr. Torres. Indeed, the Medication Administration Record (MAR) for March 2003, indicates that only on March 16, 2003, was the dose refused by plaintiff. See plaintiff's medical record pp. 248, 248 (a.). Every other day the medication was offered, taken by Mr. Torres and documented. Under these circumstances, to a reasonable degree of medical certainty, plaintiff would have experienced no significant risks to his health and his blood pressure would have remained within control during this 24 hour period of time.

12. In view of the foregoing, I believe it was completely reasonable and acceptable for me to simply document the refusal on the MAR and report such refusal to the medical department. I knew that such a low dose, refused on a single occasion, would not subject the plaintiff, whose blood pressure was under control and being appropriately managed, to a significant risk of harm.

13. Indeed, at Northern CI, medication is administered by passing the pill through the slot in the door. If the inmate refuses to get up from the bed, or to get properly dressed, it would not be appropriate to enter the cell to force a medication in such an instance where there is no appreciable risk in missing a single dose, or missing occasional doses from time to time.

14. On a number of occasions at Northern CI, I have observed inmates in various states of undress, engaging in behavior which is sexually offensive, and which creates a sexually hostile work environment for me, as a female nurse. For example, I have been faced with situations in which male inmates compared the anatomy of female staff to that of nude women depicted in various sexually explicit publications. At times, I have been invited to look at the breasts on these nude models, or asked questions about other sexually offensive subjects. I have also encountered inmates who were openly displaying their penis or even worse, masturbating while

waiting for me to come to the cell door to pass out medication. I have been confronted with this type of behavior often, ranging from several times a month to several times a week. I find this behavior incredibly disrespectful, and hostile and it creates a hostile environment for me in which to work. For this reason, the rule requiring inmates to be properly dressed before medication is passed serves a legitimate purpose in reducing such a sexually hostile work environment.

15.    I have reviewed the MAR and refusal forms filled out by me, and I followed policy and procedure appropriately. I did not have any serious concerns of significant risk to plaintiff upon review the refusal of a low dose, 25 mg HCTZ, on a single day, and it was completely reasonable and appropriate under these circumstances to simply document the refusal and attempt to offer the medication the next day. The benefit of such a preventative regimen is continued general compliance over a life-long period of time for what may be a chronic, but mild condition. Occasional refusals by the patient under these circumstances do not present a significant risk of serious harm to Mr. Torres.

    I have read the foregoing and it is all true and accurate to the best of my knowledge and belief.

_____
Deborah Kindness

Subscribed and sworn to before me this 19th day of April 2005.

_____
Notary Public /
Commissioner of the Superior Court