UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | | PRISONER |
| ANTHONY TORRES | : | CIVIL NO. 3:03CV696(JBA)(JGM) |
| v. | : | |
| JOHN TROMBLY, ET.AL. | : | MAY 15, 2006 |

### DEFENDANTS' MEMORANDUM IN OPPOSITION TO MOTION FOR RELIEF FROM JUDGMENT

Presently pending before this Court is plaintiff's motion for relief from judgment pursuant to Rule 60 (b)(3) and 60 (b)(6) Fed. R. Civ. P. Plaintiff is clearly trying to perpetrate a fraud on this Court. Contrary to the representations he makes to this Court, no legal papers have been stolen. All of his sixteen boxes of papers are accounted for, with plaintiff being allowed five in cell, and eleven in storage. During the same time frame that plaintiff alleges that he has been unable to write to this Court, he has, contrary to his representations here, written numerous motions and initiated new legal actions in the state Superior Court for the Judicial District of Tolland at Rockville. See, .e.g. Torres v. Little, CV06-4004731-S (filed March 9, 2006); Torres v. Choinski, CV -06-4004128 (Motion for Ex Parte Injunction filed Dec. 21, 2005; Motions filed by Plaintiff Feb. 6, 2006, Feb. 7, 2006 and March 10, 2006; see Docket sheet attached hereto, Doc. ## 108, 109, 110, 11, 112, 113, 114); Torres v. McGill, CV-05-4002653 (Filed May 27, 2005); See other cases listed on Party Name Search Results as of 5/8/06, attached from Judicial website, www.jud2.state.ct.us/civil_inquiry/DspParty.asp. The defendants respectfully request that plaintiff's motion be denied and in opposition to the motion file the accompanying affidavits

of Captain Donahue, Correctional Treatment Officer Tuller, Counselor Fargo and Counselor Supervisor Bradway,  incorporated by reference herein below, together with other supporting documentation.

## **FACTS**

On April 20, 2005, defendants filed their Motion for Summary Judgment in this case, together with supporting affidavits and moving papers. See Doc. #73. In addition, pursuant to Local Rule 56(b), defendants' counsel undersigned below, sent to plaintiff a Notice to Pro Se Litigant, and attached to that Notice were both a copy of Rule 56 Fed. R. Civ. P. as well as Local Rule 56. Plaintiff was expressly warned that a motion for summary judgment was pending, and this plaintiff, an experienced pro se litigant, was once again apprised of what he had to do to oppose the motion. Plaintiff was advised, in part, that,

> THE DEFENDANT'S MOTION MAY BE GRANTED AND YOUR CLAIMS
> MAY BE DISMISSED WITHOUT FURTHER NOTICE IF YOU DO NOT FILE
> PAPERS AS REQUIRED BY RULE 56 OF THE FEDERAL RULES OF CIVIL
> PROCEDURE AND RULE 56 OF THE LOCAL RULES OF CIVIL
> PROCEDURE. COPIES OF THESE RULES ARE ATTACHED TO THIS
> NOTICE, AND YOU SHOULD REVIEW THEM VERY CAREFULLY.

Department of Correction (DOC) Administrative Directive 6.10 provides, in relevant part, that inmates such as plaintiff who is housed in a Level 5 facility at Northern CI may keep only 5 cubic feet of property in their cell. According to plaintiff's allegations, prior to February 15, 2006 plaintiff was allowed to keep a large number of boxes in his cell, as many as sixteen, but this was as a result of inattention to reasonable limits, and failure to comply with agency policy. As of February 15, 2006, plaintiff engaged in noncompliant behavior, including refusing to review his boxes to keep five in his cell, and eleven in storage, engaged in hazardous sanitary

2

violations which interfered with safety and security by blocking his cell window with paper covered with feces, and other serious acts of misconduct which disrupted the safe, secure and orderly operation of the housing unit. See Affidavits of Captain Donahue and Counselor Supervisor Bradway. This behavior escalated to the point where on March 10, 2006, plaintiff smeared feces on himself, on his cell walls and window, and also put feces into the lock of his handcuffs. As a result, plaintiff's property was removed from his cell, and he was placed in restraints.

However, at all relevant times, plaintiff has had available to him all of his legal materials. He can request to access his boxes from CTO Tuller, and he has been given abundant amounts of legal supplies by Counselor Fargo. See affidavits of CTO Tuller and Counselor Fargo. Importantly, which plaintiff does not explain in his motion, is why he was unable to respond to the summary judgment in a timely fashion at any time prior to February 15, 2006. He was given Notice to a Pro Se Litigant on April 20, 2005. See Doc. # 73. He was again given a Second Notice to Pro Se Litigant by the Court on October 14, 2005. Despite the fact that plaintiff ignored this case for six months prior to the October 14, 2005 Notice, he never once wrote a letter to the court explaining, at any time from April 20, 2005 to February 15, 2006, that he was having difficulty with his legal materials.

Significantly, during precisely the same time period, plaintiff was flooding the Superior Court for the Judicial District of Tolland in Rockville with new Motions, affidavits, memoranda and new complaints. In a Memorandum of Decision (MOD) by the Honorable Jonathan J. Kaplan, Superior Court Judge, in Torres v. Brace, et.al., Civ No. CV05-4004142, (Conn. Super . Ct. Dec. 23, 2005)(copy attached), Judge Kaplan noted the litigiousness of the plaintiff, and the

fact that he had filed a new complaint naming thirty-nine specific defendants and forty unnamed "John Doe" defendants. MOD at 1, 6. Plaintiff's complaint in that case is 195 pages. See MOD at 7. Surely, if plaintiff had the wherewithal to draft a complaint naming 79 defendants and containing 195 pages, he had the ability to file a response in this case. It is respectfully suggested that plaintiff's failure to file a response in this case was the result of a deliberate decision on his part to abandon any efforts in this case and to focus his efforts on new litigation matters that he filed in the state Superior Court. It is further suggested that plaintiff's claim that he is without access to his papers, and that his legal papers have been stolen is absolutely false. See affidavits of CTO Tuller, and Counselor Supervisor Bradway.

## **STANDARD OF REVIEW**

"A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."     United States v. International Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001). "The burden of proof is on the party seeking relief from judgment[.]" Id.     Rule 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, . . . or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Plaintiff specifically cites subsections (3) and (6) presumably based on his false claim of alleged theft of his legal materials (which are not stolen, but rather secured in a secure storage area, and which he declines to request that CTO Tuller bring to his cell), and the catchall exception, subsection (6).

4

In any event, it is clear that Rule 60( b)(6) is "properly invoked only when there are extraordinary circumstances justifying relief" or "when the judgment may work an extreme and undue hardship," id., and that motions under Rule 60( b) are disfavored, Pichardo v. Ashcroft, 374 F.3d 46, 55 (2d Cir. 2004). Subpart (6) "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice [and] it constitutes a grand reservoir of equitable 0power to do justice in a particular case."    Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986), cert. denied,    480 U.S. 908 (1987)(citations and quotation marks omitted). Furthermore, "it is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship." Id.; see also Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992). There are no extraordinary circumstances here, where plaintiff received two express Notices to Pro Se Litigant pursuant to Local Rule 56(b) which he deliberately ignored, and did not even bother to file a simple motion for extension of time. Plaintiff delayed more than ten months, and indeed, waited until judgment entered against him to raise allegations that clearly could have, and should have been raised at the time, if they were, in fact, true.

Plaintiff cannot claim that the judgment is void because he did not receive Notice, and hence, due process. A judgment is void if the court acted "in a manner inconsistent with due process of law." Beller & Keller v. Tyler, 120 F.3d 21, 23 (2d Cir. 1997) (citation and quotation marks omitted).  Here the Court waited six months, and easily could have, but did not, grant defendants' motion for summary judgment simply based on plaintiff's failure to respond. See Local Rule 7 (a). However, the Court took abundant caution and provided plaintiff with a double layer of due process by sending him a Second Notice to Pro Se Litigant on October 14, 2005,

after the defendants' summary judgment motion had been pending for six months. Plaintiff continued to deliberately ignore this Court's Notice as well as this case.

When defendants moved for summary judgment on the basis of the irrefutable medical record that plaintiff had no injury, that his blood pressure levels were excellent, and based on the defendants' moving affidavits, plaintiff had ample opportunity to respond to that motion, but he neither filed any opposition on the merits nor moved for an extension of time to respond under Rule 6(b). Having had such an opportunity, plaintiff cannot now assert that he was denied due process of law. The court's Memorandum of Decision granting the motion for summary judgment on the merits was also in an abundance of caution, in reaching the undisputed facts, insofar as the Court would have been justified in dismissing the case pursuant to D. Conn. L. Civ. R. 7(a)(1), which provides that "failure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion." Such an order, after two Notices to plaintiff to afford him due process, was therefore, clearly valid.

Neither can plaintiff argue that the district court should have ordered relief from judgment because his failure to respond to the defendant's motion constitutes "excusable neglect," permitting relief under Rule 60(b). The Court may exercise its discretion to grant plaintiff relief from judgment and the Second Circuit will review decisions to grant or deny motions to reopen judgment under Rule 60( b)(1) for an abuse of discretion. Branum v. Clark, 927 F.2d 698, 704 (2d Cir. 1991). "Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60( b)(1) relief." Nemaizer v. Baker, 793 F.2d 58, 62 (2d Cir. 1986). The same rule applies to a pro se litigant who, like the plaintiff here, waits until judgment

enters against him, after neglecting this case for nearly a year, and then claims, without any basis of personal knowledge or personal observation, he had grounds for his neglect. The plaintiff's belated and untimely excuse for not responding rings hollow, and is not based on facts. Although he clearly neglected this case, his neglect is not excusable, and should not form a basis for granting relief from judgment.

Rule 60( b)(6) may not be based on excusable neglect and is proper only where the asserted grounds for relief are not recognized in the other clauses of Rule 60( b). See Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986); Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 n.8 (2d Cir. 1979); see also United States v. Cirami, 535 F.2d 736,741 (2d Cir. 1976) (stating that relief under Rule 60( b)(6) requires a showing of "exceptional circumstances" or "extreme hardship"). see also Cent. Vt. Pub. Serv. Corp. v. Herbert, 341 F.3d 186, 190 (2d Cir. 2003) ("Because final judgments should not be lightly reopened, Rule 60( b) may not be used as a substitute for timely appeal.") (citation and internal quotations omitted).

## I.    THERE HAS BEEN NO MISCONDUCT BY AN ADVERSE PARTY

Plaintiff relies on subsection (b)(3) of Rule 60, which states in relevant part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (3) fraud . . ., misrepresentation, or other misconduct of an adverse party;…" There is no evidence that either defendant, either Correction Officer Trombly or Nurse Kindness engaged in any conduct of any kind with regard to plaintiff's boxes of legal papers. Indeed, Nurse Kindness does not even work at Northern CI, and the affidavits of CTO Tuller, Captain Donahue and Counselor Supervisor Bradway amply

demonstrate that plaintiff has abundant access to his legal materials should he choose to exchange one of the five boxes he presently has in his cell, with one of the eleven boxes of papers which are safely security in a locked storage room for plaintiff.

It is not reasonable for plaintiff to demand to possess in his cell sixteen boxes all at one time. Not only would such a massive amount of boxes poses a fire hazard, but also a safety and security hazard, as plaintiff could easily use the boxes as a barricade, or a means to hide contraband, either papers or dangerous instruments such as razor blades or other prison-made weapons. The First Circuit has stated, "it would be unrealistic to expect prison authorities to give all prisoners unfettered access to all of their legal materials at all times. It is a fact of life that prisoners live in prison cells. Their warders therefore may have good reason, based on considerations of safety and security, to limit the amount of legal documents and similar materials that prisoners may keep with them;…" <u>Sowell v. Vose</u>, 941 F.2d 32, 35 (1st Cir. 1991).

In <u>Sowell v. Vose</u>, a case with facts analogous to those raised by Torres in his Motion for Relief from Judgment, prison officials searched the prisoner plaintiff's cell and confiscated some "legal property" located there, removing it to the prison property room where it has been stored pursuant to a Massachusetts Department of Correction regulation that limits the amount of property a prisoner may keep in his cell. 103 C.M.R. 403.09. See <u>Vose</u>, 941 F.2d at 33. The First Circuit affirmed the grant of summary judgment, noting that the prison regulation was reasonable and plaintiff demonstrated no actual injury. In <u>Vose</u>, as in the present case, the prisoner can gain access to his boxes held in storage by making a request to staff, and obtaining one or more of the boxes that has been placed in storage.

8

In <u>Williams v. Lomen</u>, 2003 U.S. Dist. LEXIS 25054, (W.D. Wis.  January 27, 2003) the Court upheld as constitutional a prison rule limiting prisoners to seven paper back books. Prison regulations permitted the inmate to possess seven soft cover  books in his cell at any given time. After nine books were discovered during a routine search, the inmate was asked to select seven books to keep in his cell. After he refused to select seven books, a officer placed all of the inmate's books in his property  box,  and advised the inmate to make a list of seven books he wanted in his cell. The court held that the inmate's books were not "confiscated," but were placed in his property  box  because he refused to identify which seven books (the amount allowable) he wanted to keep in his cell and which two books (the amount in excess) he wanted to keep in his property  box.  The inmate could have had the six books in question simply by including  them in his list of seven books. The seven-book limit was reasonably related to safety and security. The same analogous argument can be made here in this case. Plaintiff could have chosen to keep in his property those papers which he found necessary to oppose summary judgment in this case, but he elected to deliberately ignore two express Notices to a Pro Se Litigant, and did nothing.

Indeed, if plaintiff's allegations are correct, due to staff's inattention to the property limitations in A.D. 6.10, paragraph 16, (limiting property to 5 cubic feet in a level 5 facility), plaintiff was allowed to keep in his cell far too many boxes as one time. See Bradway affidavit, and attachments thereto. It appears he may have had, unbeknownst to staff, as many as sixteen boxes at once. When it came to the attention of a supervisor, or when the Warden issued a reminder to staff  and inmates, dated February 7, 2006, that A.D. 6.10 only allows for 5 cubic feet of property in cell, then efforts were made to gain uniform compliance by all inmates with these reasonable property limits. Property limitations have been uniformly found to be lawful,

and prisons throughout the country limit the amount of property prisoners can have in their cells. See e.g. Owens v. Ayers, 2002 U.S. Dist. LEXIS 2312, *6 (N.D. Cal. 2002) (California limits the volume of property for an inmate to a maximum of six cubic feet, Cal. Code Reg. tit. 15, §3190. Pelican Bay Institution Operational Procedure 806 apparently further restricts the possession of property by any inmate in administrative segregation.). See also, e.g. Torres v. Edgar, 1999 U.S. Dist. LEXIS 3374 (N.D. Ill. 1999)(Plaintiff prisoner was subjected to a prison regulation imposed by defendant prison warden that mandated that all prisoners' legal correspondence was restricted to what could be contained in a wooden box. The remaining legal correspondence was placed in a secure room and was accessible to plaintiff upon seven days written notice.) Here, plaintiff can exchange his boxes in his cell, with those in storage, Monday- Friday upon simple request to CTO Tuller. There is no reason for any prison staff person to have any concern for violation of plaintiff's right of access to court, since he has abundant access to his boxes of papers in storage. There is no way that any prison staff member at Northern CI could conceivably have known they were engaging in alleged "misconduct" or violating any of plaintiff's clearly established rights when they placed his boxes in storage.

At the present time plaintiff has five boxes in his cell and eleven boxes were placed in storage. Plaintiff was all the while, each week, being provided with ample supplies of writing paper, and legal envelopes as well as free postage. Plaintiff was able to initiate a number of new civil lawsuits in the Superior Court for the Judicial District of Tolland, at Rockville. See Torres v. Brace, CV-05-4004142 (filed Dec. 23, 2005); See Memorandum of Decision (Kaplan, J.)(filed Dec.23 2005)(copy attached); Torres v. Choinski, CV-05-4004128 (hearing scheduled for May 16, 2006) (plaintiff's motions filed Dec. 21, 2005; Feb. 6, 2006; Feb 7, 2006; March 10, 2006,

April 20, 2006; docket sheet attached); <u>Torres v. Little</u>, CV-06-4004731 (filed March 9, 2006); <u>Torres v. Shea</u>, CV-06-4004830(filed April 7, 2006); <u>Torres v. Rose</u>, CV-06-4004839 (filed April 10, 2006); <u>Torres v. Donahue</u>, CV-06-4004872 (filed April 13, 2006). It is a complete misrepresentation to this Court to allege that plaintiff was prevented in any way from responding to the defendants' motion for summary judgment in this case. Obviously, if plaintiff was able to successfully mail new complaints, and motions to the Superior Court in Rockville, CT, he was just as able to file opposition papers to the defendants' motion in this case. It is just as obvious that plaintiff made a conscious litigation decision to wait until after a decision was issued by this Court on summary judgment, and then respond by filing the instant motion for relief from judgment. At no relevant time during the pendency of defendants' motion for summary judgment, especially after this Court's Second Notice to Pro Se Litigant did plaintiff express that he needed an extension of time or that he was having difficulty gaining access to his legal boxes. Indeed, he was in possession of all of his boxes until February 15, 2006, and plaintiff failed to respond to defendants' motion even after the Second Notice in October 2005, while at the same time filing new and separate actions in the state court. Plaintiff should not be allowed to mislead the court as he does and plaintiff's motion for relief from judgment should be denied.

No legal papers or files were stolen. See affidavits which accompany this memorandum. The removal of 54 pages of lists of inmate names, identification numbers, names and addresses of staff persons had nothing to do with this or any other case. Instead, it was a routine security inspection conducted by an Administrative Captain, or at his direction, to maintain safety and security. See Donahue affidavit. There is no evidence that any such conduct was unlawful or that it was "misconduct" by an "adverse party." Apparently, plaintiff has filed a separate civil

11

action in the state Superior Court naming Captain Donahue as a defendant. He is free to raise the claims raised in the instant pending motion in that separate case against Captain Donahue. He cannot, however, use the fact that certain papers containing oists of inmates, inmate numbers, staff names and staff home addresses were determined to be contraband by Captain Donahue, as a basis for an allegation of alleged "misconduct" by Nurse Kindness and C/O Trombly, the defendants in this case. As discussed above, there is no evidence that these two defendants have any knowledge of , and they certainly have no personal involvement in the removal  either the 54 pages or the securing of eleven boxes of papers and the placement of those boxes in storage.

It has already been determined by Captain Donahue that plaintiff obtained social security numbers of other individuals, as well as home addresses of certain staff. Such lists, such as the alphabetical lists of all inmates with inmate identification numbers found in plaintiff's boxes, clearly jeopardizes inmate safety, and has nothing to do with this lawsuit. See Board of Pardons v. FOIC, 19 Conn. App. 539, 547, 563 A.2d 314, 318 (1989)(holding that certain prisoner information is confidential and cannot be disclosed to other prisoners or the public). Information in the hands on one prisoner about other prisoners can easily lead to threats, extortion and other risks to security, and the Connecticut Appellate Court has stated, "information regarding … other inmates and correctional staff [is] shielded by the protection of confidentiality. This confidentiality is integral to the legitimate objectives of security and safety that the United States Supreme Court has recognized as being vital to the proper administration of  prisons." Id. 19 Conn. App at 544, 563 A.2d at 316.

Mr. Torres is not entitled to relief under  Rule   60(b)(3)  because such relief is only available if the moving party establishes by clear and convincing evidence that the opposing

party engaged in fraud or other misconduct. <u>See</u> <u>Fleming v. New York Univ</u>., 865 F.2d 478, 484 (2d Cir. 1989). Plaintiff has presented no evidence of any misconduct by any DOC staff person, and has no evidence whatsoever of any conduct by the named defendants, C/O Trombly and Nurse Kindness. A Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations or misconduct and cannot serve as an attempt to relitigate the merits. <u>Mastini v. American Tel. & Telegraph Co.</u>, 369 F.2d 378, 379 (2d Cir. 1966), cert. denied, 387 U.S. 933(1967); <u>Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc.</u>,301 F.2d 114, 115 (2d Cir. 1962).

## II.    PLAINTIFF DOES NOT MEET HIS BURDEN UNDER RULE 60(b)(6)

Plaintiff's attempt to resurrect his own case fails for lack of evidence and for lack of any explanation as to why he waited for approximately one year to respond, and yet his response is totally lacking in any evidence that would change the outcome of this case on the merits. Plaintiff's explanation does not meet the high showing required by Rule 60(b)(6). <u>See</u> <u>Amoco Overseas Oil Co</u>., 605 F.2d at 656 (district court did not abuse its discretion in finding no extraordinary circumstances or extreme hardship where movant failed to assert "anything but a sketchy and desultory defense on the merits of the underlying action"). Because the scope of Rule 60(b)(6) is potentially so broad, relief should be granted only where the movant has demonstrated "extraordinary circumstances" or "extreme hardship." <u>See</u> <u>PRC Harris, Inc. v. Boeing Co</u>., 700 F.2d 894, 897 (2d Cir. 1983). This the plaintiff has not done.

The Second Circuit reversed the granting of Rule 60 (b)(6) relief in <u>DeWeerth v. Baldinger</u>, 38 F.3d 1266, 1272 (2nd Cir.1994) where the District Court's decision inappropriately disturbed a final judgment in a case that had been fully litigated. Thus, the interest in finality of

judgments also weighs against the granting of plaintiff's motion here, where there is no extreme hardship, nor any extraordinary circumstances. As the Second Circuit stated, granting plaintiff's motion here "is simply an improvident course that would encourage countless attacks on federal judgments long since closed." <u>Id</u>. at 1274. Relief under  Rule 60(b)(6)  is appropriate only in cases presenting "extraordinary" circumstances. <u>See</u>   <u>Ackermann v. United States</u>, 340 U.S. 193, 202 (1950).  Plaintiff's case presents no such circumstances.

<u>**CONCLUSION**</u>

For all the foregoing reasons, and for those contained in the accompanying opposition affidavits and opposition papers, plaintiff's Motion for Relief from Judgment should be denied.


                              DEFENDANTS
                              C/O Trombly, et.al.

                              RICHARD BLUMENTHAL
                              ATTORNEY GENERAL


                    BY:   /s/_____
                              Steven R. Strom
                              Assistant Attorney General
                              110 Sherman Street
                              Hartford, CT  06105
                              Federal Bar #ct01211
                              E-Mail:  steven.strom@po.state.ct.us
                              Tel.: (860) 808-5450
                              Fax: (860) 808-5591

14

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing was mailed to the following on this _____

day of May, 2006:

    Anthony Torres, #246027
    Northern CI
    POB 665
    Somers, CT 06071

                                            __/s/_____
                                            Steven R. Strom
                                            Assistant Attorney General